CARL S. ALLEN, APPELLANT, v. FIDELITY-PHENIX INSURANCE COMPANY OF NEW YORK, RESPONDENT.*

Kansas City Court of Appeals. July 6, 1926.

\*Corpus Juris-Cyc References: Actions, 1CJ, p. 1052, n. 72; Appeal and Error, 4CJ, p. 883, n. 33; Fire Insurance, 26CJ, p. 136, n. 1; Insurance, 32CJ, p. 1123, n. 96.

*Mosman, Rogers & Buzard* for appellant.

*Crow & Newman* for respondent.

BLAND, J.—This is a suit upon a fire insurance policy. The case was tried by the court sitting as a jury, resulting in a judgment for defendant and plaintiff has appealed.

The facts show that on April 26, 1917, defendant issued to one A. P. Knight a fire insurance policy covering certain property owned by him, including a barn, hay and machinery; the barn was insured in the sum of $500, the hay in the sum of $25 and the machinery in the sum of $50. There is a controversy between the parties as to whether the insurance ran for five or six years, defendant claiming the former and plaintiff the latter.

On December 23, 1920, A. P. Knight and his brother, W. L. Knight, executed three promissory notes aggregating $3022.34, payable respectively to plaintiff, the Farmers Bank of Powersville and J. W. Kelso. To secure the payment of these notes, he, together with his brother, executed a deed of trust to one Trusten Hart in trust for the above-mentioned parties, conveying certain real estate, and, particularly, forty acres owned by A. P. Knight upon which the barn, hay and machinery were located. The matter of making these loans was transacted for the lenders by one Guy P. Allen, plaintiff's son, cashier of the Farmers Bank. At the time of the conveyance above mentioned, Guy P. Allen requested the Knights to deliver to him the insurance policy in question as additional security for the loan. A. P. Knight was unable to locate the policy and defendant was requested to issue a "duplicate." What purported to be a duplicate or a copy of the original policy was forwarded by defendant's agent to either A. P. Knight or Guy P. Allen and if to the former, it was turned over by one of the Knights to said Allen.

At any rate the "duplicate" policy was held by Allen as security for the notes.

The policy provided—

"This policy cannot be assigned to mortgagees or others for purposes of collateral security; but in all such cases, loss-payable clause must·be inserted on face of Policy by the Company."

"If this policy is made payable, in case of loss, to a third party, it is understood and agreed that the only right which such third. party shall acquire under it is to receive the money which may become due and payable, after the adjustment, or arbitration, provided for, has been had."

"This insurance is based upon the statements contained in the assured's application of even number herewith on file in the Company's office in Chicago, Illinois, each and every statement of which is hereby specifically made a warranty and a part hereof."

The policy also provided that it should not be assigned without the consent of the company endorsed thereon.

When the so-called duplicate policy was returned it had attached thereto a loss-payable clause reading as follows:

"Total Mortgage of $16,000 is hereby permitted. Subject to all the conditions of this policy, loss if any payable to Trusten Hart & Pollock Brothers, Mortgagee ................................. ............................................... as their interest may appear ................................................ Chicago, Ill., October 26, 1921."

On October 29, 1922, the barn, hay and machinery were completely destroyed by fire. Defendant denied liability on the ground that the policy of insurance had expired and that a mistake had been made in making out the duplicate in respect to the date of the expiration of the policy, the duplicate showing said date to be April 26, 1923, whereas defendant claimed the policy expired on April 26, 1922. The deed of trust was foreclosed in February, 1923. At the time of the trial a balance of $2000 remained due and unpaid upon the notes. After the foreclosure the bank and Kelso assigned their notes to plaintiff.

W. L. Knight, testifying for plaintiff, stated that he and his brother, when they borrowed the money mentioned, supra, were living on farms and within a quarter of a mile of each other; that they were partners in all of the live stock owned by the two until sometime in 1920 when his brother's wife became ill and her husband had to take her to a hospital and "that left it all to me;" that thereafter he attended to all of his brother's affairs; that both he and his brother made the loans and that Guy P. Allen told them to turn over to him their insurance policies to be kept as security for the loan; that when they went for the policies A. P. Knight

could not find his, so A. P. Knight asked the agent of defendant, Mr. Hamilton, for a "duplicate" and told him to mail it to Guy P. Allen when it was received from the head office by said agent. There were two "duplicate" policies obtained, one was the fire insurance policy in question, the other a wind storm policy. The wind storm policy shows that the date of its expiration was April 26, 1923, the same date as the expiration of the fire insurance policy.

The witness further testified that about the 8th of April, 1922, a loss was suffered by wind storm and settlement was made under the duplicate wind storm policy; that at the time of the fire involved in this suit, Guy P. Allen had the duplicate fire insurance policy; that when the wind storm loss occurred the witness dealt with Mr. Cooley, who had then become the local agent for the defendant, and also with a man by the name of Noah Christ; that when Cooley and Christ came out to his place to make settlement they desired to see the policy; that the witness told them that the wind storm and fire policies were at the Farmers Bank; that in about two weeks they came back and made the settlement. In the meantime the witness had gone to the bank and examined the policies and found that they had Hamilton's signature on them; that in May, 1922, when they came back Knight asked Cooley how he found the policy sued upon herein and Cooley told him that it was "all right." Plaintiff offered to prove that Knight relied upon the statement of Cooley that the policy was all right and that if he had known that the defendant would claim that the policy was not in force up to the day of the expiration as shown by the duplicate, that he would have procured other insurance. The court refused to permit plaintiff to make such a showing.

Hamilton, defendant's agent, testifying for plaintiff, stated that he took the application for the original policy and that the application was for a policy of insurance for five years from April 26, 1917; that the original policy was issued in accordance with the application; that in 1921 Guy P. Allen told him that the original policy had been lost and that he wanted a duplicate; that he wrote the company and it sent the duplicate policy, being the one sued upon; that the premium for the original policy was paid for only five years; that there was no additional premium paid from April, 1922, to April, 1923; that when the duplicate policy was sent to him by the company he read it over and saw the date of its expiration and the date it was issued but did not take notice that it was a six-year policy; that if he had noticed the error in the policy, that is, that it was a six-year policy instead of five, he would not have sent it to A. P. Knight, the insured; that he overlooked signing the duplicate; that the policy was sent to him after the fire by Guy P. Allen for his signature;

that at that time Cooley had ceased to be defendant's agent and the witness was again its representative; that the witness signed it and sent it back to Allen without knowing that it was to expire after the date of the real contract between the parties; that he was confused by the records that had been kept by Cooley; that if he had known the facts he would not have signed the duplicate policy expiring in April, 1923; that he had been misled by Cooley's books and his signing the policy was a mistake.

Cooley, testifying for plaintiff, stated that he was the agent for the defendant in 1922 and that he adjusted the Knight wind storm loss and in doing so was assisted by Noah Christ, a special agent for the defendant; that he and Christ found the two policies at the Farmers Bank and at this time both of them contained the signature of W. H. Hamilton, agent for the defendant; that at that time he had a conversation with Guy P. Allen who asked him "if these policies were in effect and in good shape and the endorsements proper, and in case of loss would they be responsible, would the policy be paid," and that Christ assured Allen "that they would pay all they called for;" that at that time the witness knew that Allen was holding the policies because Allen had a mortgage on the place.

Guy P. Allen, testifying for plaintiff, stated that he had the conversation with Cooley and Christ and that he asked Christ "if the endorsements and everything was all O. K.—if in case of loss I would be fully protected—he told me that those policies were just good for what they called for." Allen further testified, over defendant's objection, that he relied upon this statement and that if he had had any reason to believe that the policy sued upon expired prior to the date shown in it, he would have had the policy renewed.

The only evidence introduced by defendant was the application for the original policy dated April 26, 1917, for a period of five years from that date; that proof of loss filed by A. P. Knight signed June 19, 1920, showing that the policy was dated on April 26, 1917, and terminated on April 26, 1922, an application for an increase in the amount of the policy showing date of expiration of policy as April 26, 1922. In rebuttal Guy P. Allen testified that he did not know that defendant was claiming that the policy expired on April 26, 1922, and that he knew nothing relating to the insurance except that shown in the "duplicate" policy.

The petition is in the usual form. It alleges that the policy was issued on April 26, 1917, and was in force until April 26, 1923; that the policy was assigned to Trusten Hart, trustee for plaintiff and the holders of the other notes and that Kelso, the Bank, and A. P. Knight had assigned to plaintiff all of their right, claim and interest against

the defendant, and asked judgment in the sum of $575. The "duplicate" policy was attached to the petition. There is no evidence of any assignment of the interest of A. P. Knight to plaintiff. The amended answer of the defendant consisted of a general denial and alleged that it issued a policy of insurance to A. P. Knight on the 26th day of April, 1917—

"   .   .   .   exactly like the policy attached to and made a part of plaintiff's petition, except date, and this defendant states that afterwards it was represented to defendant that the policy so issued on said date had been lost or destroyed and requested the issuance of a duplicate policy, and that upon the request of said Knight for such duplicate the paper sued on was issued to A. P. Knight;" that at the time of the issuance of the duplicate on account of error and mistake made by the scrivener it stated the policy was to expire in 1923; that this mistake was not known or discovered by defendant until claim was made under the policy after the fire; that no premium was paid at any time after April, 1922, and that no contract existed between said Knight and his assigns and this defendant after that date; that all of these facts were known to plaintiff long prior to the institution of this suit. The answer prayed that the duplicate policy be reformed so as to show that it was to expire in April, 1922.

The reply consisted of a general denial and an allegation that after the issuance of the policy sued upon the defendant through its agents represented and warranted to plaintiff and his assigns that the policy of insurance sued upon was valid and binding and protected plaintiff and his assignees according to the terms of that policy and until the date of the expiration shown in said policy, and that plaintiff and his assignees relied upon said representations and warranties and on the provisions of the policy sued upon and were led to believe and did believe that the policy existed and was in full force and effect until the date of expiration shown therein; that by reason of these facts defendant was estopped to deny the existence and force of the policy up to the date of the expiration shown therein.

There was no declaration of law or finding of fact given or requested and in this situation we are required to sustain the action of the court if it can be upheld upon any theory.

Plaintiff insists that—

"The duplicate policy was regularly issued by the defendant and took the place of the original and has all of the force of the original and was properly received in evidence.   .   .   .

"The suit is upon a written instrument, the execution of which is admitted and there being no question about the loss, plaintiff's right to recover as a matter of law is established."

It is also claimed, in reference to the defense of the company, that the representations of the agents of the defendant induced plaintiff

to rely upon the policy and estops defendant from now claiming that the policy was not in effect at the time of the fire; that the mistake in the expiration date of the insurance was brought about by the negligence of the defendant, and where one of two innocent parties is to suffer for a situation brought about by the active fault of either, that one should be liable whose neglect is the immediate cause of the situation..

In plaintiff's original brief it is insisted that the answer of the defendant asked for the reformation of the policy sued upon, did not convert the action into one in equity but that the cause remained a suit at law. After defendant filed its brief calling our attention to the rule that as the suit was one at law if there is any substantial evidence to support the finding of the trial court it must be upheld, and that we are not permitted to review the weight of the evidence as in equity cases, plaintiff filed a reply brief in which it appears he is not certain whether this was a proceeding at law or in equity but claims that he was entitled to recover in either event. The question as to whether the suit was converted into one in equity has a very material bearing upon the result to be reached in this court and it is necessary for us to decide this question. We feel certain that the answer did not convert the suit into one in equity for it did not allege sufficient facts upon which the court could grant the relief requested. [Wolf v. Hartford Fire Ins. Co., 269 S. W. 701, 704.] The answer fails to state facts showing that the scrivener was acting for both parties at the time the duplicate policy was made out, and for this reason it stated no cause for equitable interference. [Wall v. Mays, 210 S. W. 871; Stephens v. Stephens, 183 S. W. 572.] We need not say anything in reference to the propriety of a request to correct what appears to have been a mere substitute for the policy and not the original contract. [See Benton v. Martin, 40 N. Y. 345, 347.] At the beginning of the trial plaintiff insisted that the case had not been converted into one in equity and protested against its being tried as such and defendant, it would seem, abandoned its prayer for equitable relief. The record recites that a jury was waived and the judgment of the court is merely one for defendant and does not grant or pass upon the relief requested in the answer. We think there is no question but that the case must now be considered as a suit at law.

Plaintiff has failed to cite any authority in point for the contention that the duplicate policy issued by the defendant is to be treated as the contract of insurance in this case. The one case cited under this head, McCuaig v. City Savings Bank, 111 Mich. 356, 358, explains the technical difference between a copy and a duplicate and holds that whereas a copy may not be introduced in evidence unless proof is made that the original is lost, a duplicate may be offered in evidence

without such proof. We have no quarrel with the statement of the law contained in the Michigan case but it has little bearing on the situation here presented. Conceding that the so-called duplicate was properly introduced in evidence without further proof, when defendant introduced evidence tending to show that it was not an exact duplicate or copy, the court sitting as a jury was not required to regard it as such. In this connection we might say that the testimony is overwhelming, indeed, if there is any dispute whatever regarding it, that the original policy was issued for a term of five years and was not in force at the time of the fire. The so-called duplicate policy was nothing more than a substitute for the original policy and was not the contract of insurance, that contract being evidenced by the original policy, which was lost. It was not a new agreement but merely evidence of the lost instrument. [A. O. U. W. v. McFadden, 213 Mo. 269, 287; Bank v. Farnsworth, 38 L. R. A. (N. D.) 843; Lewis v. Bank (Tex.), 83 S. W. 423; Benton v. Martin, supra.] As we will hereinafter show, plaintiff and his assignors had no greater right under the policy than did A. P. Knight, the original person insured. Plaintiff is not entitled to recover unless on some ground of estoppel or the like. And as the claim of estoppel is founded upon parol testimony and as the court found for defendant, his decision must be upheld.

"An assignment of a policy of insurance with the consent of the company to a purchaser of the interest of the insured constitutes a new contract between the assignee and the company; the terms of the policy constituting the basis of the new contract." [2 Cooley, Briefs on the Law of Insurance, pp. 1063, 1064.]

Of course the "assignment" of the policy in suit is not such an assignment as is referred to by Cooley for the reason that A. P. Knight did not assign all of his interest in the policy but merely insofar as to cover the interest of the assignee, the only effect of which was to render the assignee the appointee to receive the payment in case of loss.

"If the policy contains merely the ordinary loss-payable clause, the mortgagee has no direct rights against the insurer, but recovers solely on the right of his mortgagor," (2 Cooley, Briefs on Law of Insurance, p. 1521), and—

"It seems to be the theory generally that a policy taken out by the owner, payable to the mortgagee as his interest may appear, is directly upon the owner's interest, and therefore the mortgagee's right is wholly dependent on the validity of the policy in the hands of the insured." [*Idem*, p. 1227.]

"The assignment transferred the policy of the insured only, and did not create a new contract." [2 Cooley, Briefs on Law of In-

surance, p. 1231; see, also, Kabrich v. State Ins. Co., 48 Mo. App. 393; Bidwell v. Ins. Co., 40 Mo. 42, 46.] It therefore appears that there was no new contract entered into between defendant on the one hand and plaintiff and his assignors on the other at the time the loss-payable clause was attached to the policy and plaintiff can recover only through the right of A. P. Knight under the policy as originally written.

On the question of estoppel conceding that the facts testified to by plaintiff's witnesses, if true, would give rise to estoppel in a case of this kind, these facts are based upon parol testimony. It was perhaps unusual, in view of the fact that the policy in all respects appeared regular, that W. L. Knight and Allen should have asked Cooley and Christ if this policy was "in good shape," etc., and it is a matter for comment that the evidence shows that the *policy at the bank* was signed by Hamilton when Cooley and Christ were there, yet there was other evidence in plaintiff's behalf that the "duplicate" policy was not signed by Hamilton until long afterwards. The inference to be drawn from the evidence is that Hamilton signed the original policy before it was delivered. An inference might be drawn from the evidence that the original policy was at the bank when Christ and Cooley made the assurances and that it was lost and the duplicate was obtained afterwards. A. P. Knight was not called as a witness nor his absence accounted for and the court could have well found that he knew that the policy expired on April 26, 1922. The application he signed and the policy which were delivered to him showed on their face that the insurance expired at that time. He paid a premium for only five years' insurance and not six years. W. L. Knight was close to A. P. Knight and transacted his business for him and was a witness for plaintiff. It is not necessary for us to hold and we do not hold that the failure to call A. P. Knight as a witness raises any unfavorable inference against plaintiff in reference to knowledge on the part of Guy P. Allen as to the true facts in relation to the duplicate policy, that is, that there was a mistake in the date of its expiration. As stated, it is not necessary for us to go into all of these matters for the reason that the court could have disbelieved any part or all of the testimony of plaintiff's witnesses on the sole ground of their lack of credibility. [Gannon v. Laclede Gas Light Co., 145 Mo. 502.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.