A. J. GORDON, APPELLANT, v. THE NORTHWESTERN NATIONAL INSURANCE COMPANY, A CORPORATION OF MILWAUKEE, WISCONSIN, RESPONDENT.—77 S. W. (2d) 512.

Springfield Court of Appeals. Dec. 24, 1934.

*John J. Wolf* for appellant.

*Mercer Arnold* for respondent.

SMITH, J.—This is an appeal from a judgment rendered in favor of the defendant at the January term, 1934, of Circuit Court of Jasper County.

The case was tried upon an amended petition consisting of two counts. The first count was to recover the sum of two thousand two hundred fifty ($2250) dollars for the alleged failure of the defendant to repair the dwelling house owned by the plaintiff, and which had been damaged by fire on the 9th day of November, 1931. The second count was an attempt to recover two hundred fifty ($250) dollars damages caused by the inability of the plaintiff to rent said house after the damage caused by the fire.

We do not set out the pleadings here, but the policy of insurance was attached to the pleadings and was offered in evidence. We shall set out such parts of the pleadings and the policy as we deem necessary in the opinion.

Trial was had before the court without a jury, and judgment on both counts was had for the defendant. The plaintiff was cast on his motion for new trial, and the case is before us.

The plaintiff in his statement of facts says, "For the purpose of any statement of facts in this case, appellant adopts the statement of facts as embodied in the agreed statement of facts submitted in evidence and read into the record, by agreement of the parties at the trial of this cause."

This agreed statement of facts is as follows:

## "A STIPULATION OF PARTIES ON AGREED FACTS

"MR. ARNOLD: For the purpose of expediting the trial of this cause, the parties hereto stipulate and agree that the evidence in said cause will show the following facts concerning which there is no dispute: (First) That the plaintiff was at all times hereinafter mentioned the owner of Lot No. 11 in Murphy's Addition to Joplin, Jasper County, Missouri, on which was located a dwelling house known as No. 2109 Connor Avenue; that the defendant is a corporation organized and existing under the laws of Wisconsin, engaged in business in Joplin, Missouri, as an insurance' company, engaged in writing fire insurance policies; that on the 19th day of March, 1931, the defendant issued and delivered to the plaintiff its policy of insurance, which it is agreed will be admitted in evidence for a premium of $34.25 paid by the plaintiff, in which policy it was agreed that the defendant insured the dwelling house above mentioned for the sum of $2,500 against loss by fire from noon March 19, 1931, to noon March 19, 1934, and would pay the same in sixty days after notice and proof of loss according to the terms of said policy. That on the 9th day of November, 1931, and while said policy of insurance was in force, the said house was partially destroyed by fire;.that the plaintiff thereafter, and in due time, gave notice and proof of said loss to the defendant company and its agent at Joplin, Missouri.

"It is further agreed that the plaintiff and defendant were unable to agree among themselves as to the extent of the damages to said property, and that thereupon, in accordance with the terms and provisions of said policy, the plaintiff, and defendant acting through its agent, entered into a written agreement for appraisal of said damages, which written agreement is to be offered in evidence, and agreed upon the selection of two appraisers to inspect said property and determine the loss or damage to same and the cost of making repairs to said damaged building. That plaintiff selected John S. Phillips as his appraiser and the defendant selected Trueman E.

Martinie; that the two appraisers thereupon selected E F. Speck as umpire; that the three thereupon qualified, examined said property and determined the sound value thereof together with the expense of repairs and loss or damage sustained, and made their written report, which is to be offered in evidence. That on the 15th day of December, 1931, the defendant, through its resident agent at Joplin, Missouri, mailed to plaintiff, by registered mail, at his address in Joplin, Missouri, its draft No. 21554 in the sum of $1,106.05, made payable to plaintiff and O. H. Gentry, trustee, and Louaddio Ping Feroglia, mortgagee, which letter was forwarded to plaintiff, who was then at Skiatook, Oklahoma, and was at a later date received by plaintiff and by him brought to Joplin and turned over to his attorney, John J. Wolfe; and that on the 8th day of January, 1932, or thereafter, plaintiff's said attorney, under instructions of the plaintiff, returned said draft or check so made out by defendant insurance company and tendered to the plaintiff and returned said draft to the defendant, together with the letter thereto attached of the same date, which will be introduced in evidence.

It is further agreed that on the date the policy of insurance in question was issued by the defendant to the plaintiff the property described in said policy of insurance was incumbered by a deed of trust given by one J. R. McPeak, a former owner, to J. H. Spencer, Trustee for Overton H. Gentry, and dated October 18, 1911, and recorded in the office of the Recorder of Deeds of Jasper County, Missouri, on October 24, 1911, in Book 133 at page 82, and that said deed of trust was given to secure the payment of a note of said J. R. McPeak in the sum of $1,600, due and payable on the 18th day of October, 1915; that upon the date of the fire above mentioned said mortgage was valid and a subsisting lien upon said property; that said indebtedness amounted to $1,600 with some interest; that said note had been by the named payee therein transferred and endorsed and assigned to various parties; and upon the date of said fire Louaddio Ping Feroglia, formerly Louaddio Ping, was the owner and holder of said note and deed of trust. That said policy of insurance at the time of its issuance contained and there was attached thereto a standard mortgage loss clause, as will more fully appear from the policy of insurance to be introduced in evidence; that said standard mortgage loss clause had been upon said policy at all times and that Louaddie Ping Feroglia was the assignee of O. H. Gentry, the named payee in said note. That after the receipt of the letter of January 8, 1932, Louaddie Ping Feroglia instituted a suit in the Circuit Court of Jasper County, Missouri, to recover the amount of insurance evidenced by the amount of her note or deed, to-wit, the sum of $1,600; that the said suit was heard at the April term, 1932, in Division No. 1 of the Circuit Court of Jasper County, Missouri, and a judgment entered in favor of Louad-

dio Ping Feroglia against this defendant in the sum of $1,106.05, and that said judgment was subsequently paid and satisfied by this defendant. And it is agreed that the entire record and pleadings in the case of Louaddio Ping Feroglia v. The Northwestern National Insurance Company of Milwaukee, Wisconsin, shall be considered introduced in evidence in this case.

"MR. WOLFE: For the purpose of any competent evidence appearing from the files and record in said case, if any, competent and admissible as a defense in this case, and subject to any objection on the part of the plaintiff as to the competency of the same in this case.

"BY THE COURT: If you are limiting the introduction and observation of the files in that case, I think you had better offer such as you wish and make your objection to them so as to keep your record straight.

"MERCER ARNOLD: Mr. Wolfe's objections is to the entire proceeding.

"BY THE COURT: If you admit that they may be accepted as a part of the evidence in this case, and then limit your objections, your record will be silent as to which particular part you limit it, unless the offer is made and objection made and ruling of court made.

"BY MR. ARNOLD: We are offering the entire record and pleadings and Mr. Wolfe is objecting to the entire record and pleadings.

"MR. WOLFE: When it is offered in evidence, then we will reserve the right to make our objections to the competency of such parts of it.

"MR. ARNOLD: You object, as I understand it, to the whole proceeding?

"MR. WOLFE: Yes.

"MR. ARNOLD: On the theory that it constitutes no defense in the case.

"MR. WOLFE: Yes.

"THE COURT: Let the record now show that they offer as a part of this record those files, and let Mr. Wolfe make his objections, and then I can tell the limit and scope of your offer and objections,

"MR. WOLFE: Yes, and it is further agreed that the evidence in this case will show that the defendant insurance company, after notice and demand on the part of the plaintiff that the defendant repair the damages to the said insured building, that the defendant has not made any repairs whatsoever to the said insured building to this date.

"MR. ARNOLD: It is further agreed that each of the parties to this suit paid his own appraiser and paid one-half of the expense of the umpire in making said appraisement, according to the stipulation, and that the amount paid was $31. It is agreed that the defendant through its local agent at Joplin, Missouri, upon December

2, 1931, mailed to Mr. A. J. Gordon, 2109 Connor Avenue, Joplin, Missouri, a letter, a carbon copy of which may be offered in evidence, and in which letter the defendant, through its agent at Joplin, Missouri, advised the plaintiff that it was prepared to pay to the plaintiff, O. H. Gentry and Louaddio Ping Feroglia, the amount of the award, to-wit, the sum of $1,106.05.

"MR. WOLFE: And that the testimony on the part of the plaintiff in this case will be that he did not receive such letter.

"MR. ARNOLD: Yes.

"MR. WOLFE: It is further agreed that the reasonable rental value of the insured property in question before the said fire damage was reasonably the sum of $25 per month, and that since said fire damage to said insured property, the same has been at all times to this date in an untenantable condition by reason of the said partial burning of said dwelling house, and has been untenantable and of no rental value by reason of the damaged condition thereof, and that no repairs whatsoever have been made to said dwelling house by anyone.

"BY MR. ARNOLD: Defendant's Exhibit A is the agreement to appraise and the report of the appraisers. And defendant's Exhibit B is carbon copy of letter of December 2, 1931, defendant's Exhibit C is the letter of December 15, 1931, from the Wester Adjustment & Inspection Company, local agent of the defendant, addressed to A. J. Gordon, Joplin, Missouri. It is further agreed that Louaddio Ping Ferolgia, the holder of the mortgage on said property, at no time joined in any agreement with the plaintiff for rebuilding of the property or its repair, and at no time did she individually make demand on the insurance company to repair. Said defendant's Exhibits A, B and C being in words and figures as follows, to-wit:

"Defendant's Exhibit A:

"AGREEMENT FOR SUBMISSION TO APPRAISERS

"THIS AGREEMENT made and entered into by and between A. J. Gordon, of the first part, and the Insurance Company or companies whose name or names are signed hereto, each for itself and not jointly, of the second part, Witnesseth, that Truemen E. Martinie and John S. Phillips shall appraise and estimate, by items and in detail, the sound value of, and the loss and damage to, the property destroyed or damaged by the fire of November 9, 1931, about 2:30 A. M. as specified below, stating the sound value and loss and damage separately. These two appraisers shall first select a competent and disinterested umpire, and if the two appraisers fail to agree they shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such sound value and loss and damage and shall be binding upon both parties to this agreement.

"It is expressly understood that this agreement and appraisement

is for the purpose only of ascertaining and fixing the amount of said sound value and loss and damage to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement.

"The property on which the sound value and loss and damage is to be determined is as follows, to-wit: Dwelling located at 2109 South Connor Avenue, Joplin, Jasper County, Missouri.

"It is further expressly understood and agreed that in determining the sound value and loss and damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, and the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor.

"IN WITNESS WHEREOF, we have hereunto set our hands, at Joplin, Missouri, this —— day of November, 1931. Having signed duplicates.

"(Signed)   A. J. GORDON, Assured.

"Northwestern National Underwriters Agency of the Northwestern National Fire Insurance Company, by Wester Adjustment & Inspection Company.

"By R. B. NEVIN, Adjuster."

The agreed statement contains written declaration and oath of appraisers, and written selection of Edward F. Speck as umpire, with his written qualification. We deem it unnecessary to quote these in full.

"AWARD

"To the Parties in Interest:

"We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value and loss and damage to be as follows:

"Sound Value                                      Loss and Damage
 "$3,000.00                                              $1,106.05

"Total sound value and Total Loss and Damage $1,106.05.

"Witness our hands this the 24th day of November, 1931.

"(Signed)   TRUEMAN E. MARTINIE,
"JOHN S. PHILLIPS,
"Appraisers.
"EDWARD F. SPECK, Umpire.

(Stamped on Instrument)

"Northwestern National Insurance Company.
"Received Aug. 27, 1932.

"Defendant's Exhibit B—Same being a letter of Dec. 2, 1931.

"Defendant's Exhibit C being in words and figures as follows:

1014

"Western Adjustment and Inspection Company
    "Branch Office, A. G. Whited, Manager
    "Joplin National Bank Building
    "Joplin, Missouri, December 15, 1931.
"Registered Mail—
"Mr. A. J. Gordon
"2109 Connor Avenue
"Joplin, Missouri.
"Dear Sir: We enclose you herewith draft No. 21554 of the North-western Underwriters Agency of the National Fire Insurance Company, of Milwaukee, Wisconsin, in the sum of $1,106.05, being the amount agreed on by a board of appraisers for fire loss which occurred November 9, 1931, and damaged your property situated at No. 2109 Connor Avenue, Joplin, Missouri, and insured by the above company under their policy No. C-11216.

"You will note that this draft is made payable to yourself, O. H. Gentry, Trustee, and Louaddie Ping Feroglia, mortgagee. It will be necessary that all parties named in the draft endorse both draft and receipt. After being properly endorsed this draft is convertible into cash at par.
"AGW:GR

                                       "Yours truly,
                                       "A. G. WHITED, Manager."

Th policy of insurance introduced in evidence was for $2500 covering total destruction by fire, windstorm, etc., of the building in question. The policy contained the following mortgage clause:
"UNIFORM STANDARD                                    FORM NO. 127
                    "NATIONAL BOARD
                "STANDARD MORTGAGE CLAUSE
                    "(With Contribution)
"Loss, if any, payable of O. H. Gentry or assigns, as Mortgagee (or Trustee), as such interest may appear.

"This policy, as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act. or neglect of the mortgagor or owner of the within described property nor by the commencement of foreclosure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title or possession of the property, nor by any increase of hazard; PROVIDED that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same; and PROVIDED further that the mortgagee (or trustee) shall notify this Company of the commencement of foreclosure proceedings, and of any notice of sale relating to the property, and of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy,

the same shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for any increased hazard; and PRO-VIDED also that upon failure of the insured to render proof of Loss, such mortgagee (or trustee) shall, as if named in this policy as the insured, but within sixty days after notice of such failure, render Proof Loss, and shall be subject to the provisions of this policy as to appraisal and the times of payment and of bringing suit.

"Failure upon the part of the mortgagee (or trustee) to comply with any of the foregoing obligations shall render the insurance under this policy null and void as to the interest of the mortgagee (or trustee).

"This insurance may at any time be cancelled as to such mortgagee (or trustee) interest by giving the mortgagee (or trustee) a ten days written notice of such cancellation.

"In case of any other insurance upon the within described property, this Company shall not be liable to said mortgagee (or trustee) under this policy for a greater proportion of any loss or damage to the within described property, than the sum hereby insured bears to the whole amount of insurance on said property, payable to, held by, or consented to by said mortgagee (or trustee.)

"On payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's (or trustee's) right or recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's (or trustee's) right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage.

"Attached to and forming part of Policy No. 11216 of the North-western National Insurance Co.

"Issued at its Joplin, Mo. Agency. Dated 3-19-31.

"UNIFORMITY ** Trade Mark

"Signed  O. H. GENTRY  Agent
"G. W."

The policy contained the following clauses with reference to the amount of loss, and the manner of ascertainment thereof:

"1.   This company shall not be liable beyond the actual cash value of this property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair and replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss having been thus determined, the sum for which this company is liable pursuant to this policy shall be

payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this company to take all, or any part, of the articles that such ascertained or appraised value, and also to repair, rebuild, or replace the property loss, or damage with other of like kind and quality within a reasonable time after giving notice within thirty days after the receipt of the proof herein required, of its intention to do so; but there can be no abandonment to this company of the property described.''

''In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, and damage and stating separately sound value and failing to agree shall submit their differences to the umpire and the award in writing of any two shall then determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

''This company shall not be held to have waived any provisions or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.''

The agreed statement of facts shows that the insurance company mailed a check to the plaintiff for $1,106.05, the amount of the loss found by the appraisers. On the 8th day of January, 1932, this check was returned by registered mail to the company with the following letter:

''January 8th, 1932.

''Registered Mail—
''Western Adjustment & Inspection Co.,
''Joplin National Bank Building,
''Joplin, Missouri.

''Re: A. J. Gordon Insurance Claim
''Dear Sir:                    No. 43414—Policy No. 11216
''I am directed by Mr. A. J. Gordon to return to you the check No. 21554 of the Northwestern Underwriters Agency of the National Fire Insurance Company, of Milwaukee, Wisconsin, mentioned in your letter of December 15th, 1931, addressed to Mr. Gordon. Your above mentioned letter was delayed some time in delivery to the above A. J. Gordon, on account of his being at Skiatook, Oklahoma, about that time engaged on a job of work. But he has just returned to Jop-

lin and has handed me your letter with the check for $1,106.05 above indicated, with instructions to say that we must refuse to receive this check in its present form and for the sum of only $1,106.05 as that would not cover the expense of replacing Mr. Gordon's building.

"Therefore I am handing you herewith the above check for $1,-106.05 accordingly, and wish to advise you that Mr. Gordon declines to accept the same, as made out by you, and requires that the Insurance Company carrying the above risk shall proceed at once to replace this building in its original condition as to any damages caused by fire and weather exposure.

"JJW:C

<blockquote>"Very truly yours,<br>"JNO. J. WOLFE."</blockquote>

After the taking of testimony had been closed, on February 3, and after announcement of both parties that all the evidence had been introduced and the witnesses had been released and some of defendant's witnesses had gone from the jurisdiction of the court and after the defendant had offered his declaration of law in the nature of a demurrer to the evidence in the case, the plaintiff on the morning of February 4, offered the plaintiff as a witness and offered to prove a conversation he had had with a representative of defendant in which he had asked for rebuilding of the property. This conversation purported to have been several months prior to the letter hereinbefore quoted, and sent by registered mail on January 8, 1932.

After much argument pro and con the court excluded the testimony on the theory that it was offered after the case had been closed, and defendant's witnesses had been excused and had gone from the court's jurisdiction, and that it was an attempt to contradict the agreed statement of fact that had been submitted to the court.

A resume of the foregoing facts, which we have largely taken from the defendant's statement, follows:

The suit is one to recover the sum of two thousand two hundred fifty ($2,250) dollars for the alleged failure of the respondent to repair the dwelling house owned by the appellant, and which was damaged by fire upon the 9th day of November, 1931, together with an attempt to recover the sum of two hundred fifty ($250) dollars upon the second count of the appellant's petition by reason of alleged damages caused by the inability of the appellant to rent said house after the damage caused by said fire.

Attached to the petition was the policy of insurance upon which the cause of action is based. This policy of insurance was issued by the respondent to the appellant upon the 19th day of March, 1931, and covering the dwelling house of one-story frame construction located upon appellant's property against damage by fire and lightning sustained during that period to an amount nor exceeding twenty-five hundred ($2500) dollars.

The policy is the usual fire insurance policy, and many of the conditions in it have no bearing upon the present suit.

At the time this insurance was taken out by the appellant the property in question was encumbered by a deed of trust given many years before by one J. R. McPeak to J. H. Spencer, trustee for Overton H. Gentry, to secure the payment of an indebtedness of sixteen hundred ($1600) dollars.

At the time of the fire the note secured by this deed of trust was a valid and subsisting obligation of J. R. McPeak, and the deed of trust was in full force and effect, as was admitted in the agreed statement of facts upon which this case was tried. The note at that time was owned by Louaddie Ping Feroglia, the assignee of O. H. Gentry, the named payee in said note. This deed of trust contained a provision requiring the owner of the property to furnish the beneficiary under the deed of trust, whom we will hereafter designate as the mortgagee, policies of insurance upon the building located upon the property covered by the deed of trust, in the sum of sixteen hundred ($1600) dollars. This provision had been complied with by the owner-mortgagor, by furnishing the policy in question which was made out to the owner-mortgagor, but to this policy there was attached a uniform standard mortgage clause, sometimes referred to in decisions "a union mortgage clause." This clause provided that the loss, if any, under the policy was "payable to O. H. Gentry or assigns, as mortgagee (or trustee), as such interest may appear." It also provided that the interest of the mortgagee should not be invalidated by any act of the mortgagor, or owner of the property, and provided that if the mortgagor should neglect to pay any premiums that the mortgagee was to pay same on demand, and that in the event of foreclosure the mortgagee was required to notify the respondent of such proceeding. It further provided that, in the event of loss, if the mortgagor should fail to make proof, the mortgagee should do so, and failure to do any of the above-mentioned things should render the policy void, as to the interest of the mortgagee. There was a further provision in this mortgage clause that, in the event the respondent desired to cancel the policy, it might do so, but only after giving the mortgagee ten days written notice thereof, and there was furthermore the usual subrogation clause. This mortgage clause is hereinbefore quoted by us. The other pertinent provisions of the policy have been quoted above by us.

The case was tried upon an agreed statement of facts dictated into the record at the time, of the trial before the trial court, after a jury had been waived, and upon certain exhibits offered in evidence, and referred to in said agreed statement of facts.

From this stipulation it appears briefly: That it was admitted that the appellant was the owner of the property in question; that the respondent was engaged in the business of writing fire insurance

policies; that the policy in question was written by the respondent and issued and delivered to the appellant, and the premium paid therefor; that the fire occurred November 9, 1931; that the house was partially destroyed as a result; that the policy of insurance was in force at that time, and that proofs of loss were made by the appellant, in accordance with the terms of the policy.

It was further agreed that appellant and respondent were unable to agree as to the extent of the damage; that in accordance with the terms of the policy they entered into a written agreement for an appraisal, which agreement, and the report of the appraisers, will be found in the agreed statement of facts.

It was further agreed that the appellant would select one appraiser, the respondent one, and the two select an umpire; that they qualified; examined the property and made their written report; that in accordance with that report it is agreed that the respondent issued its draft in the sum of one thousand one hundred six dollars and five cents ($1,106.05), the amount of the award, and made same payable to appellant, O. H. Gentry, trustee, and Louaddio Ping Feroglia, mortgagee; that said draft was mailed to the appellant and that upon the 8th day of January, 1932, it was returned by counsel for appellant to respondent, accompanied by a letter, which was introduced as appellant's Exhibit One, and is quoted by us above. The existence of the deed of trust; that the same was a valid and subsisting encumbrance upon the property in question at the time of the fire; that the note secured by the deed of trust was owned by one Louaddio Ping Feroglia, assignee of O. H. Gentry; and that the amount of the indebtedness was sixteen hundred ($1600) dollars were all admitted under the agreed statement of facts.

It was further more agreed that, after the refusal of the appellant to accept respondent's draft in payment of the loss, the said Louaddio Ping Feroglia, as mortgagee, brought suit against this respondent, returnable to the April term, 1932, of the Circuit Court of Jasper County, Missouri, to recover the sum of sixteen hundred ($1600) dollars, being the amount due under her mortgage, and that she recovered the sum of one thousand one hundred six dollars and five cents ($1,106.05), the amount fixed by the appraisers as the amount of damage to appellant's property.

It was further agreed that respondent paid this judgment to the said Louaddio Ping Feroglia and received satisfaction therefor. The record entries and pleadings in this last-named case were introduced in evidence and included therein were two applications of this appellant to be allowed to enter his appearance in said case, and to be made a party thereto.

The case is before us on several assignments of error, which seem to be combined by appellant in his points and authorities, and we shall consider them as presented therein. The first point is expressed by the plaintiff as follows:

"The fire damage and loss occurring to the insured premises under this policy of insurance was a PARTIAL LOSS only, and the rights, obligations and duties of the parties to the contract of insurance herein pleaded as the basis of the defendant's liability herein are obviously fixed, defined and determined by the language of the statute applicable thereto, as follows:

"'R. S. Mo., 1929, Sec. 5821. PARTIAL LOSS.—Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, OR REPAIR THE SAME TO THE EXTENT OF SUCH DAMAGE, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, AT THE OPTION OF THE INSURED.'

"The foregoing statute therefore confers upon the INSURED OWNER and policy holder herein the RIGHT AND OPTION TO ELECT whether he will accept from the insured herein, (a) A SUM OF MONEY EQUAL TO THE DAMAGE DONE TO THE PROPERTY, or (b) THAT THE INSURER REPAIR THE DAMAGED PROPERTY TO THE EXTENT OF SUCH DAMAGE, etc."

The plaintiff cites several cases in support of his contention that the insured owner had a right and option to elect whether he would accept from the insurer a sum of money equal to the damage done to the property or whether he would elect to have the property repaired. The Missouri cases cited are Non-Royalty Shoe Co. v. Phoenix, 210 S. W. 37; Branigan v. Ins. Co., 102 Mo. App. 70; Tinsley v. Aetna Ins. Co., 205 S. W. 78; and Havens v. Germania Fire Ins. Co., 123 Mo. 403.

We have considered each of these cases and we agree with the holdings on the issues therein. We think it has been established by the courts that under the provisions of Section 5821, Revised Statutes Missouri, 1929, the insured has the option of electing to receive money or to have the property repaired, and the above cited cases so hold. But those cases were based on the facts in each particular case, and the facts in those cases differ from the facts in the case at bar. One of those cases, the Branigan case, does hold that the mortgagee may maintain a suit for the proceeds of the insurance, as was done in this case.

None of those cases go into the points at issue here. We cannot escape the conclusion that the owner in this instance, since this particular mortgage clause was in his policy, is largely affected by what the mortgagee did. The mortgage clause, known as the "Union Mortgage clause," which we have quoted above in full, was a separate and complete contract between the mortgagee and the plaintiff and the defendant, and one in which the owner had consented when he applied for the policy, and especially when he accepted the policy with the morgtage clause therein.

Under this mortgage clause attached to the policy with the consent of the insurer and the insured, the mortgagee had the first claim to the proceeds of the insurance up to the amount of the debt secured, and could bring a separate suit to recover from the insurer the amount of the insurance up to the amount of the debt due the mortgagee. The Kansas City Court of Appeals expressed the difference in an "open mortgage clause" and the "Union Mortgage Clause" in the case of Prudential Ins. Co. v. German Mutual Fire Ins. Ass'n, 60 S. W. (2d) at page 1009, as follows:

"A policy that simply provides that it shall be payable to the mortgagee as his interest may appear is called an 'open mortgage clause,' and is the character of mortgage clause PLEADED IN THE PETITION. This clause is to be distinguished from the 'Union Mortgage Clause.' In the latter named clause it is stipulated, in substance, that in case of loss the policy is payable to the mortgagee and that his interest as payee shall not be invalidated or affected by any act or omission of the mortgagor. Where there is merely an open mortgage clause there is no privity created between the company and the mortgagee, he not being a party to the contract but merely an appointee to receive the proceeds in the case of loss. His rights will be defeated by a breach of the conditions of the policy by the mortgagor. If for any reason the policy becomes void and it ceases to exist as to the mortgagee. Whereas, the union mortgage clause operates as an independent contract of insurance between the mortgagee and the company upon the former's interest, which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely by his act. [26 C. J. 84, 85, 273, 274, 275; 2 Cooley's Briefs on Ins. (2 Ed.) 1267-1272; 14 R. C. L. 1037, 1038; Kabrich v. State Ins. Co., 48 Mo. App. 393; Bidwell v. St. Louis Floating Dock & Ins. Co., 40 Mo. 42, 46; Allen v. Fid.-Phoenix Ins. Co., 221 Mo. App. 764, 285 S. W. 761, 764; Ford v. Iowa State Ins. Co., 317 Mo. 1144, 298 S. W. 741, 56 A. L. R. 842; see notes 58 Am. St. Rep. 667-673.]"

It is now pretty well determined that a mortgage clause, such as in this case, is a separate and distinct contract with the mortgagee, that cannot be abrogated or interfered with by the insured, and that no act or omission on the part of the owner, occurring after the issuance of the policy will affect the mortgagee's right to recover. [Berry v. Equitable Fire & Marine Ins. Co., 317 Mo. l. c. 1129, 298 S. W. 63; Trust Co. v. Insurance Co., 201 Mo. App. 223, 210 S. W. 98; Ford v. Iowa State Ins. Co., 317 Mo. l. c. 1154, 298 S. W. 741; and cases there cited.]

We must hold against the plaintiff in his contention that Section 5821, Revised Statutes Missouri, 1929, gives him an unconditional right and option to elect in case of this kind, where the provisions of the mortgage clause gives to the mortgagee rights over which the plaintiff had no control.

The plaintiff in the remaining three subdivisions of his points and authorities has to do with the agreement to appraise the property, which agreement, is set out in full hereinbefore under the agreed statement of facts as Exhibit A.

The plaintiff cites several authorities to the effect that by signing such an agreement for appraisal the plaintiff did not thereby waive his right of election under the statute. We have examined the cases cited, and without designating them with the distinctions in each case we feel it is sufficient here to say that in none of the cases relied upon by plaintiff did the question of the rights of the third party, the mortgagee, intervene as in this case, and we think what we have heretofore said about mortgagee's interest, answers plaintiff's contention here. In other words under the Missouri decisions, no acts on the part of the insured-owner, or on the part of the insurer could set aside the rights of the mortgagee.

The agreed statement of facts show that the mortgagee did bring suit for her interest in this policy. A judgment was had for the amount of the loss, or damage to the property. In that suit in order to fix the amount of loss the report of the appraisers was introduced. We are not called on here to pass on the competency of that evidence offered in the suit by the mortgagee. In fact no appeal was taken from the judgment there. If error was committed in the introduction of evidence there, or in the trial court's action in not permitting the plaintiff in the instant case to have been made a party to that suit, these matters cannot be considered here. All parties had their remedies in that case, and there was no appeal from that judgment. The amount of the judgment there was. paid to the mortgagee, and the judgment was satisfied.

The insurance company paid to the mortgagee what a competent court had decreed it should pay, and paid it to the person, who under the terms of the contract entered into by the plaintiff, the insurer and the mortgagee, under the holdings of our courts was entitled to the first claim thereon.

In the face of this testimony based upon this particular mortgage clause and following the decisions in this State we think and hold that the trial court committed no error in deciding for the defendant.

The judgment is therefore affirmed. *Allen, P. J.,* and *Bailey, J.,* concur.