METHA MAY SWIHART, PLAINTIFF AND RESPONDENT, v. MISSOURI FARMERS MUTUAL TORNADO, CYCLONE AND WINDSTORM INSURANCE COMPANY, DEFENDANT AND APPELLANT.—138 S. W. (2d) 9.

Springfield Court of Appeals. February 15, 1940.

Rehearing Denied March 12, 1940.

*Cave & Hulen, A. D. Sappington* and *John C. Pope* for appellant.

*Farrington & Curtis* and *Jack S. Curtis* for respondent.

I.

### Statement of Facts.

TATLOW, P. J.—The parties in this case will be referred to herein as "plaintiff" and "defendant." We will endeavor, first, to state the facts which are undisputed.

This is a suit brought by the plaintiff to recover damages on a policy of insurance issued on February 21, 1934, by the defendant, to Oscar Bean, of Seymour, Missouri. The policy was written for a term of five years, commencing at noon on the 21st day of February, 1934, and ending at noon on the 21st day of February, 1939, and insured the premises against all direct loss or damage by tornado, cyclone or windstorm.

The defendant is a farmers' mutual windstorm insurance company, organized and existing under chapter 37, article 15, Revised Statutes 1929; specifically under section 6060, Revised Statutes 1929.

The insured property was damaged on February 20, 1937. It was admitted that the property was damaged by a windstorm, to the extent of $400, which was the amount sued for.

At the time of the issuance of the policy, the sum of $3.75 was paid in cash by Oscar Bean, to whom the policy was issued. On February 23, 1935, Oscar Bean paid an assessment of $2.62. On February 29, 1936, he paid an assessment of $2.63. There was no default in the payment of premiums at the time of the loss.

The 1937 assessment of $3.50 was never paid for the reason that the company refused to recieve the assessment from the plaintiff as it claimed that the policy had never been assigned to her. This assessment was sent with the following letter.

"Seymour, Mo., Feb. 22nd. 1937.

"Dear Sir:

"Am sending in my payment of $3.50 to pay my Insurance. Will you please see that the policy No. W-15515 is transferred to me as

Oscar Bean said he had paid for the transfer but the notice are always sent to him and I did not get my notice of assessment until yesterday when he brought it over to me.

"Respectfully,
"Mrs. Metha May Swihart,
"R. R. No. 5, Seymour, Mo."

The company returned Mrs. Swihart's money order, with the following letter:

"March 10, 1937

"Mrs. Metha May Swihart
"Seymour
"Missouri
"Dear Mrs. Swihart:

"I am returning herewith your money order of $3.50 which you recently sent us in payment of the 1937 assessment upon policy number W-15515 of Oscar Bean in which letter you advise of a loss on February 20 and request the policy transferred to you.

"Since you failed to have the policy transferred before the loss, our Company would not be liable for this claim.

"Your letter enclosing the money order and advising us of the loss is the first notice of any kind that we have had that the place had changed hands.

"Mutually yours,
"John C. Stapel,
"Secretary."

The abstract refers to plaintiff's exhibit No. 2, as being a deed from Oscar Bean and wife to the plaintiff, but it does not contain the exhibit. The plaintiff testified:

"I acquired that property June 21, 1935, or shortly thereafter, from Mr. Bean. Before that time I owned other property and Mr. Bean owned the property which I now have and I conveyed that property to Mr. Bean.

"I was to transfer my insurance policy to Mr. Bean and he was to transfer his insurance policy to me. I saw Mr. Preston, the agent, and had my insurance on the property that I then owned, transferred to Mr. Bean."

Mr. Bean testified:

"I was to transfer my insurance policy to Mrs. Swihart and she was to transfer her insurance policy to me. . . ."

Thus far the facts are undisputed.

The disputed facts in the case relate solely to whether Bean notified the defendant of the transfer by him of the property, to the plaintiff, and requested that the policy be assigned to the plaintiff. The facts with reference to this controverted question will be reviewed and considered in the course of the opinion.

Paragraph 3 of the petition is as follows:

"Plaintiff further states that during the year 1935, the title to the above described property was transferred by said Oscar Bean to the plaintiff, Metha May Swihart, and that thereafter and during the year 1935 the said Oscar Bean notified the defendant of such transfer and requested that the policy of insurance above mentioned be transferred to the plaintiff, Metha May Swihart, but that defendant has failed so to do, but that by reason thereof defendant has at all times had knowledge thereof, consented thereto and acquiesced therein."

Defendant's answer contains, first, a general denial. Paragraphs II and III of the answer plead a "standard" or "union" mortgage clause which is different from the "open" mortgage clause. This mortgage clause provides that the loss, if any, is payable to the mortgagee, as his interest may appear.

In the "union" mortgage clause it is provided, in substance, that the loss is payable to the mortgagee, and that his interest as payee shall not be invalidated or affected by any act or omission of the mortgagor; in other words, that it is an independent contract between the mortgagee and the insurance company—at least to the extent above mentioned.

The mortgage indebtedness in the instant case exceeded the loss and the defendant contends that, this being so, the plaintiff had no interest in the loss and could not maintain a suit therefor; that the only one that could sue for the loss was the mortgagee, who had forfeited its rights under the policy, and that, for this reason, the court erred in striking out paragraphs II and III of the amended answer pleading the mortgage clause. If the court erred in so doing, it likewise erred in refusing to direct a verdict for the defendant, for the same reason.

This presents the first question for decision.

The defendant also pleads the transfer of the property as rendering the policy void, and pleads also the following by-laws:

"Section 15. This policy of insurance shall be void on any of the following contingencies: . . . If this policy of insurance be assigned before a loss without the written consent of the company endorsed hereon: . . ."

"Section 19. A member may transfer a policy to the buyer of his property by signing the assignment on the back of the policy, paying his *pro rata* share of the current year's assessment to date, and sending the policy in for the secretary's endorsement. The transfer fee shall be fifty cents."

The answer further pleads:

". . . . Defendant further states that said policy of insurance referred to in plaintiff's petition was never assigned to the plaintiff; that the defendant did not consent, orally or in writing, to an assignment or transfer of said policy of insurance to the plaintiff, and

that the plaintiff did not become a party to said insurance policy, and was never insured under said policy and did not have and does not now have any right, title or interest to proceeds of said policy. . . . ''

The defendant contends that, on account of the transfer of the property contrary to the policy and on account of the fact that it had not consented to the transfer of the policy to the plaintiff, the plaintiff was never insured under the policy, and that the court erred in refusing to direct a verdict for it.

This presents the second question in the case.

If both of these questions are decided against the defendant, then it further contends that the court erred in admitting incompetent evidence, and in its instructions—particularly in placing the burden upon the defendant to prove to the jury's satisfaction that the letter which the witness Bean claims he wrote and mailed to it, requesting the assignment, was not, in fact, received by the defendant.

## II.

### No Error in Striking Out Parts of Answer.

Paragraphs II and III of the answer, which were stricken out by the court, plead the ''union'' mortgage clause as a complete and perfect defense to the case because the mortgage indebtedness largely exceeded the total amount of the loss. The defendant's contention, in substance, is this: That, under such facts, the mortgage clause creates an entirely separate and distinct insurance policy in favor of the mortgagee, and in which the mortgagor, as the fee owner of the premises destroyed, has no interest. In other words, it seeks to invoke the familiar principle of law that a party cannot recover on someone else's cause of action. The defendant cites, in support of this contention, three Missouri cases: Trust Co. v. Phoenix Ins. Co., 201 Mo. App. 223, 210 S. W. 98; Prudential Ins. Co. v. German Mut. Fire Ins. Assn., 228 Mo. App. 139, 60 S. W. (2d) 1008; Gordon v. Northwestern Nat. Ins. Co., 228 Mo. App. 1008, 77 S. W. (2d) 512.

It cites a number of cases from other jurisdictions, and a number of Missouri cases dealing with the ''open'' mortgage clause. The ''open'' mortgage clause cases, in our judgment, have no application here. They hold that the mortgagee's interest is not separate or distinct from the interest of the mortgagor, and that the right of recovery is dependent on the mortgagor's right to recover. With reference to the proper party to sue, they hold that either or both may sue; that a recovery by either bars the other; and some of the cases hold that the insurance company, by making timely application, may, for its own protection, have the mortgagee or the mortgagor as the case may be, brought in so as to be protected against being vexed twice concerning the question of who is entitled to be

compensated for the loss. These cases throw no light on the question raised by the defendant.

The Prudential case, *supra,* involved the "open" mortgage clause, but the court, in deciding the case, distinguishes between the two clauses, saying:

". . . . Where there is merely an open mortgage clause there is no privity created between the company and the mortgagee, he not being a party to the contract but merely an appointee to receive the proceeds in case of loss. His rights will be defeated by a breach of the conditions of the policy by the mortgagor. If for any reason the policy becomes void or ceases to exist as to the insured it is void and it ceases to exist as to the mortgagee. Whereas, the union mortgage clause operates as an independent contract of insurance between the mortgagee and the company upon the former's interest, which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely by his act. . . ." (l. c. 142.)

This quite clearly distinguishes between the two character of mortgage clauses. The fact that the "open" mortgage clause creates no privity of the contract, is unimportant in this State for the reason that a party can sue on a contract made for his use, although he is not a party thereto. Hence, for this reason, under such an "open" clause either or both of the parties have such an interest as entitles them to maintain a suit for the loss.

The above case holds that the "union" clause operates as an independent contract of insurance, which cannot be defeated by a breach on the part of the mortgagor of the conditions of the policy, or solely by his act. Observe that, while it is an independent contract, it is such only for a limited purpose, so that the act of the mortgagor alone and of itself cannot defeat the right of the mortgagee. Nevertheless, it is not an entirely disconnected contract. A recovery by the mortgagee, of necessity, inures to the benefit of the mortgagor. The recovery is to pay, in whole or in part, the debt of the mortgagor, and in substance is as much for his benefit as if he recovered the loss and applied it otherwise than on the mortgage indebtedness. As between the parties the mortgagee is entitled to have the loss paid applied on the indebtedness owed to him by the mortgagor. In the absence of fraud or collusion, a recovery by either bars the other, and protects the insurance company. Where the suit is brought by the mortgagor, the insurance company, for its own protection, is entitled by timely application to have the mortgagee brought in as a party.

The Prudential case, *supra,* did not involve the question now urged by the defendant. Neither does that case sustain defendant's contention that, because the mortgage indebtedness exceeds the loss, the mortgagee has no interest in it and has no right to sue, either as a party beneficially interested or as a trustee of an express trust.

In the case of Trust Co. v. Phoenix Ins. Co., 201 Mo. 223, there were two cases tried before the two divisions of the court sitting together. In one case Judge McElhinney, of Division One, gave judgment for the defendant insurance company, and in the other case Judge Wurdeman, of Division Two, gave judgment for the plaintiff.

The appeals were heard together and the appellate court affirmed the opinion of Judge McElhinney and reversed the opinion of Judge Wurdeman.

The mortgage clauses in these cases were substantially the same, providing that the interest of the mortgagees should not be invalidated by any act of neglect on the part of the mortgagors or owners of the properties, but they contained also provisions that the mortgagees (or trustees) should notify the insurance companies of any change of ownership of which they had knowledge. The court held that, before the losses, the respective mortgagees knew of the transfers and neglected to notify the companies, and, even though the contracts in favor of the mortgagees were separate from the contracts with the owners, the failure of the mortgagees to notify the companies rendered the policies void. This, too, even though the plaintiffs there contended that at the time they received the notices of the transfer of the properties they were the mere naked trustees in the deeds of trust and, as such, were not bound to give notice of a change of ownership, even if it came to their knowledge. So far as we can see, this case does not sustain the contention of the defendant in the instant case. Whether the losses there were more or less than the respective indebtedness does not appear, was not mentioned, and is certainly not the basis of the opinion.

The case of Gordon v. Northwestern Nat. Ins. Co., 228 Mo. App. 1008, 77 S. W. (2d) 512, is one in which the mortgagee in a "union" mortgage clause, sued to recover a loss, and recovered a judgment against the insurance company. No appeal was taken from the judgment. The trial court refused to permit the owner to be made a party to the suit. Thereafter, the owner of the property sued the insurance company on the theory that, notwithstanding the mortgage clause, he, as the owner of the property, was entitled to have the property restored under the terms of the policy. The court disposed of the case on the following grounds:

We must hold against the plaintiff in his contention that section 5821, Revised Statutes Missouri, 1929, gives him an unconditional right and option to elect in case of this kind, where the provisions of the mortgage clause gives to the mortgagee rights over which the plaintiff had no control.

. . . . . . .

". . . . If error was committed . . . in the trial court's action in not permitting the plaintiff in the instant case to have

been made a party to that suit, these matters cannot be considered here. All parties had their remedies in that case, and there was no appeal from that judgment. The amount of the judgment there was paid to the mortgagee, and the judgment was satisfied." [l. c. 1021, 1022.]

That case, in our opinion, does not sustain defendant's contention in the instant case.

We think the plaintiff in the instant case clearly states the correct rule under the Missouri decisions, as follows:

". . . . The only effect of the standard form clause is to give the mortgagee greater rights than the mortgagor in the event the mortgagor violates the policy provisions."

Under either clause, the mortgagee is entitled to have the amount of the loss applied on the mortgage indebtedness, if he properly and timely asserts his right. The fact that the mortgage indebtedness exceeds the loss is an indifferent one, at least in this State. In those States that hold to the common law rule that there must be a privity of contract in order to authorize one to sue on a contract, the question of whether the mortgagee is the only party who can maintain a suit in case of loss, is no doubt important for the purpose of determining the right to sue; but it is not important for the purpose of determining whether there can be a recovery. In this State, where privity of contract is not essential or necessary to enable one to sue (because he is entitled to sue on a contract made for his benefit even though he is not a party thereto), the question of whether the loss exceeds the mortgage indebtedness is neither important nor controlling. The insurance company is entitled, for its protection, to have both parties made a party to the suit so as to determine to which party it shall pay the loss; but it is not entitled to successfully assert (as it seeks to do in this case) that the owner cannot sue because of the "union" mortgage clause. If it has any doubt as to whether it might be sued against by the mortgagee, it is entitled, for its protection, to have the mortgagee brought in. This is not what the insurance company is seeking to do in this case. It appears from the record in this case that there was a prior suit, but whether it was by the mortgagee or by the plaintiff in this case, or both, does not appear.

In the instant case the mortgagee has had ample time to assert its right. It does not seem that there would be any possible danger of the defendant having to pay the loss twice, in case it is compelled to pay the loss to the mortgagor or the owner.

We rule this point against the defendant.

### III.

### No Right to Assign the Policy.

The defendant makes the following contention:

"The court erred in refusing to sustain the defendant's demurrer to the evidence filed at the close of all the evidence, . . . for the following reasons:

"(a) The written consent of the defendant company to the assignment of the policy to plaintiff was not obtained.

"(b) The defendant company did not, by its conduct, waive the provisions of the by-laws requiring its written consent to the assignment endorsed on the policy.

. . . . . .

"Section 19 contemplates written consent of the Secretary to an assignment of the policy by the insured, by providing that the policy shall be sent in for 'the secretary's endorsement.' . . .

. . . . . .

". . . If the evidence failed to reveal that such was done, then the plaintiff was in the position of a stranger who had no interest in the policy and the demurrer to the evidence should have been sustained. . . ."

Defendant further contends that a policy of insurance is merely a contract, and, like any other contract, it must, to be binding, have an offer and acceptance; in other words, that the assignment is not the continuation of an existing contract, but is the making of an entirely new contract, and, in order to do this, the minds of the parties must meet.

The defendant cites the case of Truglio v. Zurich General Accident & Liability Ins. Co., 247 N. Y. 423, 160 N. E. 774, where the Court of Appeals of New York, speaking through Justice Cardozo, says:

". . . The defendant was free to accept or to reject the new owners either with reason or without. Mere silence or inaction left the situation as it was. For a fortnight or more the owners had been without insurance. The policy issued to their grantor had spent its force as a contract upon the conveyance of the property. More than a request was needed to bring it back to life."

The defendant says:

". . . The contract requires that in addition to the notice, the consent of the company must be obtained and must be endorsed on the policy. . . ."

This distinction between the making of an entirely new contract and the continuation of an existing contract, runs through the defendant's entire argument as does the "red cord in the emblem of the British Navy." This distinction, if it exists in the instant case, is quite important.

Defendant's contenton, as stated by it, is:

". . . An executory contract cannot be assigned by one party to a stranger without the consent of the other party, if the contract is personal in its nature or if the contract, by its terms, expressly forbids an assignment without the consent of the other party."

We do not think that either of these conditions exists in this case. The contract is not *personal* in its nature, as is shown by the authorities cited by the defendant, Rendelman v. Levitt, 24 S. W. (2d) 211, l. c. 213, where it is said:

". . . A life insurance policy is not regarded as a personal contract, and may be assigned without the assent of the insurer. The same is true of a marine insurance policy. [New York Life Ins. Co. v. Flack, 3 Md. 341, 56 Am. Dec. 742, l. c. 748.]"

That a marine insurance policy is not a personal contract is true because the perils of the sea are beyond human control. The perils from windstorms are even further beyond human control. The insured certainly has no control over windstorms. He can neither bring on a storm by any act of his (as in the case of fire) nor prevent its occurrence; it is a matter entirely beyond his control.

Hence, it seems perfectly plain to us that the contract in the instant case is not a *personal* one and, in the absence of an express provision in the contract, the insured had an absolute right to assign it, without the consent of the defendant.

Neither do we think that the by-laws (Sections 15 and 19, *supra*) require the consent of the company for a policy owner to assign the policy to one to whom he has transferred the property.

On the other hand we think, under the terms of section 19 (heretofore copied in full) that, where the policy owner signs the assignment on the back of the policy, pays his *pro rata* share of the current year's assessment to date, and sends in the policy to be endorsed, together with the transfer fee of fifty cents, he has the absolute right to have the assignment made, and it is the contract duty of the secretary to endorse the assignment. In our opinion, the term "written consent of the company," in section 15, when read with section 19, is equivalent to saying "with the written endorsement of the company showing the transfer." The by-laws are fairly susceptible to this construction and this is the construction that must be given to by-laws on the elementary principle that such policies are to be construed most favorably to the insured. This is especially true where there is no basis or reason for such a provision, as is the case where the contract is personal, because, in such cases, as said by the court in the Rendelman case *supra*, "much depends upon the character of the owner as a man of prudence, integrity, and watchfulness, and that these considerations enter into the contract" (l. c. 213). In the instant case, on account of the subject-matter, nothing depends on the character of the owner as a man of prudence, integrity and watchfulness. The character of the insurance excludes such considerations entering into the contract. They have nothing to do with whether the property will be damaged or destroyed by a storm, and their entire validity depends solely on the fact that the contract so provides. The *pro rata* provision was for the protection of the company if the

original owner cancelled his policy and received back the unearned premium. It does not apply where the original owner requested this transfer. The entire purpose of the by-laws in the instant case was to protect the company if the insured cancelled the policy, by requiring the assignee to pay his *pro rata* share of the current year's assessment, and to require an endorsement so that the company would know who to send the premium notice to, and primarily and chiefly, to receive a transfer fee of fifty cents. It was not the purpose of the by-laws to reserve the power in the company, with or without reason, to refuse to consent to the assignment. The company did not reserve any such authority. On the contrary, the insured had the absolute right of assignment by complying with the provision of the by-laws setting out the form to be used in completing and executing the assignment. It seems to us to be a mere matter of form rather than of substance, except as to the transfer fee of fifty cents.

For the reasons stated, we cannot agree with the contention of the defendant that mere silence on its part did not constitute a waiver where the insured or his assignee had not complied with all of the requirements for entering into a new contract. It is true, of course, if read literally and construed strictly as is required in construing the obligation of a voluntary surety who is entitled to a strict construction, the by-laws in the instant case would be construed as contended for by the defendant.

Being a matter of form rather than of substance the provision could be waived by the company even though there was no consideration for the waiver or no element of estoppel upon which to base it. In such a case, the company's silence and inaction—especially when coupled with the collection of the assessments after knowledge of the transfer of the property—are ample to form a basis for the waiver of such provisions.

## IV.

### SHIFTING THE BURDEN OF PROOF.

In this case the defendant contends that the court, by giving Instruction No. 2, shifted the burden of proof from the plaintiff to the defendant.

This instruction reads:

"You are further instructed that if you find and believe from the evidence that Oscar Bean wrote and deposited a letter in the U. S. Post Office at Seymour, Missouri, properly stamped and addressed to the defendant at Columbia, Missouri, advising defendant of the sale and transfer of the property in question to plaintiff, and requesting defendant to assign and transfer said policy to plaintiff and enclosing the sum of $1 to pay for said transfer, then in such event, it de-

volves upon the defendant to prove to your satisfaction that such letter was not in fact received by the defendant."

In the case of Clapper v. Lakin, 343 Mo. 710, l. c. 721, which was a case involving the legitimacy of an heir, the following instruction was given:

". . .: 'The jury are instructed that if Merit Clapper was raised in the home of Henry and Nancy Clapper along with the other children and regarded and treated by them and the other children as a son of Nancy and Henry Clapper, then the burden is upon the defendants to prove by clear and satisfactory evidence that Merit Clapper was a bastard and unless the defendants have so proven your verdict must be for the plaintiffs.' . . ."

The Supreme Court held that the giving of that instruction was error for the reason that if shifted the burden of proof.

We are unable to distinguish any substantial difference between the instruction in that case and the instruction in the instant case, and, on the authority of the Clapper case, as well as the cases there cited, in our opinion, the giving of Instruction No. 2 in the instant case was error.

### V.

#### HARMLESS ERROR.

While the giving of Instruction No. 2 in the instant case, was error, after carefully considering the matter, we have concluded that it was harmless error. We think, if that instruction had not been given, the same identical verdict would very probably have been reached by the jury. In addition to this, we are of the opinion that, even if the witness Bean did not write and mail the letter as he testified, nevertheless, the defendant in this case waived this point.

On March 12, 1937, the defendant wrote the witness Bean, as the original insured, the following letter (omitting caption):

"March 12, 1937.

"Mr. Oscar Bean

"Seymour

"Missouri

"Dear Mr. Bean:          "W-15515—$3.75

" 'A penny saved is a penny made,' said Ben Franklin.

"The by-laws provide that I send you a registered notice today with a 50 cent penalty added but I want to save you that 50 cents so am writing you instead and will not send the register for five more days.

"Won't you help me help you make that 50 cents and justify my not sending the register by remitting at once?

"Mutually yours,

"John C. Stapel,

"Secretary.

"JCS :M

"This assessment is for protection furnished during the past year. If you had had a loss you would have expected the other members to pay promptly. They are expecting the same of you. I know you will not disappoint them by not doing your part."

This letter, signed by the secretary, was written after the plaintiff's letter to defendant of February 22, 1937, in which she fully informed the defendant of the facts, including the fact that Oscar Bean claimed that he had theretofore notified the defendant of the transfer of the property and, in addition, had sent the defendant $1 with the request to transfer the policy of insurance to plaintiff. It was not sufficient for the defendant to merely return plaintiff's check for the 1937 assessment. It should have returned the 1936 assessment to Bean, and it should not have written the letter of March 12, 1937, seeking to collect from Bean the 1937 assessment. It had the right to collect the assessment only on the theory that the policy was still in force.

Plaintiff's letter of February 22, 1937, was in fact received by the defendant, as is shown by the secretary's letter of March 10, 1937, heretofore copied in the statement. Hence, when the defendant's secretary wrote to Oscar Bean on March 12, 1937, the company was fully apprized of the facts. The defendant attempts to escape the effect of this letter by the testimony of its secretary that it was a form letter and was prepared some time before it was sent out. It does not seem to us that it is important when the letter was prepared; we think it is the act of sending the letter that is controlling, and, in our opinion, constitutes a waiver within the rule of the Missouri decisions. Springfield Gas & Electric Co. v. Southern Surety Co., 250 S. W. 78, l. c. 81, where the rule is laid down as follows:

"In determining the effect of the conceded facts, we must keep in mind the established rules of law governing the question of waiver as follows: A waiver occurs when—

" 'one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forebears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward.' [Citing cases.]

"A consideration which is necessary to support a contract is unnecessary to support a waiver. A waiver may even take place in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and may be shown by conduct as well as by express words. [Citing cases.] Waiver is often closely related to estoppel, but evidence that fails to show estoppel may show waiver. [Citing cases.] Waiver is ordinarily a question of fact, and depends largely on the intention of the party. That intention, however, is not the secret intention of the party, but is the intention which is mani-

fested by his conduct or his words in relation to the matter involved. [Citing cases.]''

We think the conceded facts in the instant case bring it within the rule of those cases. The secretary's letter of March 12, 1937, *supra,* undoubtedly recognizes and concedes that the policy was then in force. It is true that that letter was written to Bean, the original insured, and not to the plaintiff, and for this reason the defendant contends that it was not admissible in evidence. This contention harks back to defendant's primary contention that the plaintiff could not be insured except by a new contract. To this contention we do not agree.

If, as the letter concedes, the insurance was still in force in favor of Bean, his collection of the insurance would necessarily have been for the use and benefit of the plaintiff to whom he sold the property. The letter constitutes a waiver just as it would if it had, in fact, been written to the plaintiff instead of to Bean. The controlling point, under the authorities *supra,* is that the act of the company in writing the letter, as a matter of law, conceded that the insurance policy was in force, and, having once made the concession, it could not be recalled. John Alt Furniture Co. v. Maryland Casualty Co., 88 Fed. (2d) 36, l. c. 40 (C. C. A. 8), where it is said:

'' 'The filing of proofs of loss by a specified time is a condition made for the benefit of the company, which it may avail itself of or not; and if it determine to waive it, it cannot afterwards recall the waiver, and insist upon the forfeiture.' ''

This is so under the Missouri decisions even though there is no consideration for the waiver nor any element of estoppel.

We have not overlooked defendant's contention that the court erred in the admission of evidence. This contention, so far as it could have affected the result, is also based on defendant's contention that, to entitle the plaintiff to recover, there must have been a new contract.

The other errors, if any, could not have affected the result and are, therefore, harmless.

In our opinion the judgment of the court should be, and is, affirmed. *Smith,* and *Fulbright, JJ.,* concur.