[1] Plaintiff, William H. Johnson, sued Dur-Est, a corporation, defendant, and sought an order by the court cancelling a note for the face amount of $5,750, secured by chattel mortgage on certain furniture and fixtures theretofore acquired by plaintiff from defendant, conditioned on plaintiff's payment to defendant of $2,025. The grounds upon which relief was sought was fraud and deceit. Defendant caused J. F. Johnson, father of plaintiff, and B. B. Zahner, plaintiff's father-in-law, to be brought in as third party defendants, they having indorsed the note for plaintiff at the time of and as a condition of the sale out of which the controversy arises. Defendant sought judgment on the note, and foreclosure of the chattel. Judgment was for plaintiff as prayed, except that the amount of money ordered paid to defendant was $2,000 instead of $2,025, and defendant has appealed.
[2] The wording of the petition and prayer for relief, the evidence, the findings of fact as made by the court, and the judgment entered, tend to create confusion as to the nature of the cause of action pleaded and adjudged. However, it seems to have been treated and tried as an action for damages for fraud and deceit. We will dispose of this appeal on that theory.
[3] Defendant contends that the trial court made inconsistent and contradictory findings of fact, and that some of his findings of fact are not supported by evidence. We will make our own findings of fact and write our own judgment, having in mind that, as to contradictory testimony, due deference should be paid to the findings made by the trial court.
[4] A Mr. Durland and a Mr. Esterly purchased a doughnut machine and other equipment. They leased a store building and installed same therein, with the intention of engaging in the business of making and selling doughnuts, coffee, and other similar items. The establishment was known as "The Dunkery," as announced by a Neon sign over the door. The business was incorporated under the name of `Dur-Est," each of these two men owning 50% of the stock of the corporation.
[5] The owners were unable to procure sugar, due to OPA restrictions. No new business could be issued a sugar allotment, except such as were owned or operated by *Page 613 
veterans of World War II. they leased the establishment to one Sam See (who later married Mr. Esterly's daughter). See was to pay the owners $200 per month, under the terms of the lease, and was to pay the real estate rental of $100 per month. The lease, by its terms, was subject to cancellation by See upon 30 days notice. During See's occupancy the business carried on was exclusively that of See, and defendant's sole interest was its right to $200 per month under the terms of the lease. See operated from April until October, 1946, when he notified the owners of his intention to cancel the lease. The owners then decided to sell, and caused the following advertisement to appear in a newspaper. "Donut Shop — Possibly this is what you have been looking for: a going business which will make a couple of people a good living; located on a busy South Side corner; selling donuts, popcorn, salted nuts, etc. Also have counter for serving donuts and coffee, ice cream, malts, etc., seating facilities for 16 persons, everything new; if present owners were ex-servicemen and could obtain sugar allotment (as any ex-servicemen may) this place could not be bought today; the full price is $6,750 cash, no terms; personal interview will be arranged with financially qualified buyers only. LO. 0678."
[6] None of the foregoing facts are now in dispute. The evidence was, further, to the effect that Mr. Zahner saw the advertisement and met and talked with Mr. Esterly regarding purchase by plaintiff, an ex-serviceman who was looking for some business in which to engage. He suggested that plaintiff look into the matter.
[7] At this point it will make for clarity if the particular grounds relied on to prove fraud are stated. It is plaintiff's contention that he purchased the business known as "The Dunkery," including trade name and good will. Defendant contends that it sold him certain enumerated articles of furniture, machinery, etc., constituting the equipment located in a place of business which was known as "The Dunkery," that defendant did not own any business, and only sold the equipment. Plaintiff contends that the owners of defendant corporation represented to him that they were selling a going business; that the business was prosperous; that daily sales of doughnuts amounted to 160 dozen, at a price of 40 ¢ per dozen; that the cost of the doughnuts was 14 ¢ per dozen; that the place was grossing $50 per day; and that the net profit was $600 per month. Plaintiff says that the business was not profitable; that the gross receipts were not $50 per day; that the number of doughnuts sold was not 160 dozen; that the cost price of the doughnuts was far more than 14 ¢ per dozen; that the net profit was not $600 per month, or any sum; that the business was, in fact, losing money and was of no value, as a business. He says that he believed said false statements, and relied and acted thereon, to his damage. There was testimony which tended to prove plaintiff's contention in this regard.
[8] Plaintiff visited the place of business and inquired of See if it was for sale. See referred him to the owners. He visited the place on a number of different days, in the early part of November, 1946, staying for several hours at a time. He observed See mix and cook doughnuts. The front storeroom was small and while in it one could observe practically every phase of the operation of the business. He saw the cash register operated, observed customers coming and going, observed their purchases and the amounts thereof, and noted the posted prices of the three types of doughnuts produced.
[9] On or about November 9, plaintiff and defendant made and signed a written contract, by the stated terms of which defendant agreed to sell, and plaintiff agreed to buy, certain "attached itemized items of furniture, fixtures, machinery supplies, and repairs and improvements * * * being, located in storeroom at 4730 Troost Avenue, Kansas City, Missouri, commonly known as `The Dunkery.'" The items referred to in said contract are enumerated on a sheet attached thereto. The purchase price named was $6,750, $1000 paid in cash and the balance of $5,750, to be paid in cash, 6 months thereafter, as indicated by a promissory note, secured by chattel mortgage covering the items mentioned. Both *Page 614 
of the third party defendants signed said contract as witnesses, and both also affixed their signatures on the back of the note "With recourse," as sureties or guarantors of the payment of the note.
[10] Plaintiff paid $1,000 cash, and immediately took possession of the storeroom and fixtures. He and See inventoried the supplies, such as doughnut mix, shortening, sugar, etc., unused real estate rental and insurance, all of which was the property of See. This inventory totaled $475, for which amount plaintiff gave See his check. He alleged, and contends, that he, therefore, paid $7,225 for the business. He operated this place of business until some time after the note became due and this suit was filed. He stated that the business steadily lost money and, after having futilely sunk an additional $1,000 therein in trying to make it successful, he gave up and stored such of the furniture, machinery, and fixtures as were removable, and that same were in storage at the time the trial was held.
[11] Defendant contends that plaintiff by his conduct, has waived any right to assert fraud in this case, or is estopped from doing so; that he has been guilty of laches, and of conduct inconsistent with any charge of fraud. If this were a case for rescission such contention would be entitled to serious consideration. McLean v. Clapp, 141 U.S. 429, 12 S.Ct. 29, 35 L.Ed. 804; Swihart v. Missouri Farmers Mutual Tornado etc., Company, 234 Mo. App. 998, 138 S.W.2d 9, loc. cit. 17; Restatement of the Law Contracts, Section 4821; but it is not that kind of case. Authorities dealing with rescission are not, applicable. The law is otherwise where, as here, plaintiff affirms the contract and sues for damages. Cottrill v. Crum, 100 Mo. 397, 13 S.W. 753, 18 Am.St.Rep. 549. There is no conduct shown which would bar plaintiff's cause of action on the theory here presented.
[12] Defendant contends that the written contract entered into clearly states the rights and obligations of the parties, that by its terms it clearly appears that it did not sell a business, but specifically sold certain enumerated articles of personal property, and that it was error for the court to permit the introduction of parol evidence tending to vary or contradict the terms of the written contract. Of course plaintiff cannot recover unless parol evidence is admissible.
[13] The general rule is that the terms of a written contract may not be varied or contradicted by parol evidence. However, the rule applies only in the absence of fraud or mistake. When fraud is relied upon, as here, parol evidence is admissible. Colt Co. v. Gregor, 328 Mo. 1216, 44 S.W.2d 2, loc. cit. 6; Horewitz v. Schaper, Mo. App., 119 S.W.2d 474, loc. cit. 481.
[14] Defendant says that there is no evidence of fraud except that shown in certain testimony relative to statements made by Mr. Esterly during the course of negotiations leading up to the execution of the contract; that Mr. Esterly was dead at the time of the trial; that such testimony came exclusively from plaintiff and from the third party defendants, all of whom are, according to defendant's contention, parties to the contract; and that such testimony should have been excluded, under the provisions of Section 1887, R.S. Mo. 1939, Mo.R.S.A., known as the "Dead Man's Statute," upon objection timely made by defendant. Statements made by an agent of a corporation to the other contracting party are not admissible as against the corporation, after the death of the agent, upon objection properly made. Williams v. Edwards, 94 Mo. 447, 451, 7 S.W. 429; Wilson v. Schaff, Mo.App., 207 S.W. 845, 846. Plaintiff contends, however, that neither of the third party defendants are parties to the contract. There was testimony from two other outside witnesses relative to such statements claimed to have been made by Esterly. Therefore, there was competent evidence tending to prove that Esterly made the statements which plaintiff claims to have relied upon, and which he claims were fraudulent.
[15] Defendant next contends that there is no competent evidence upon which to predicate a finding that the value of the business sold (if defendant did, in fact, represent that it was selling a going business *Page 615 
as distinguished from the itemized chattels) was not, in fact, of the value of $6,750; that there is no evidence of value of the business or of the chattels. In answer to this contention plaintiff points to the testimony of Mr. Zahner, who detailed a conversation he had with Mr. Esterly when the contract and mortgage were being prepared, as follows: "I stated — I know what you mean — that he didn't have over $2500 worth of equipment in the place, where did he get his price? He said, `we have a going business. The boy is making good money, taking in fifty dollars a day or so on the cash register. * * *" I said `old machines are high or higher than new equipment.' He said `we have to make up the purchase price. That is the reason for the amounts. It builds up to my price. You couldn't sell it for $2500 setting on the floor.'"
[16] Were J. F. Johnson and Zahner competent witnesses to testify regarding alleged fraudulent statements made by Mr. Esterly, providing that timely objections were offered?
[17] Plaintiff and third party defendants were represented at the trial, and are represented in this court, by the same counsel. They state that the brief filed herein "is the brief of all of the respondents." They say therein: "It was clearly shown at the trial that the defendant was guilty of having made fraudulent misrepresentations, that the third party defendants relied thereon and in reliance thereon indorsed the note of William H. Johnson." Defendant, in stating its cause of action against third party defendants, alleged that the indorsement of the note of plaintiff by third party defendants was concurrent with and formed a part of the consideration for the sale of the property. Zahner testified to the effect that defendant demanded his indorsement of the note before it would proceed with the transaction. Third party defendants' answer incorporated all of plaintiff's allegations of fraud on the part of defendants, as a defense to the note, and as grounds for the relief prayed. Under the theory upon which the case was tried, as to third party defendants, they were liable on the note, as indorsers, unless they were exonerated from liability because of fraud on its procurement. Both Johnson and Zahner were parties to the contract represented by the note, upon which defendants' third party suit, as to them, was based. They were incompetent to testify as to statements in the nature of admissions made by Mr. Esterly, in the course of negotiations leading up to the execution of the note, since Mr. Esterly was the agent of the corporation and was deceased at the time of the trial.
[18] However, it is contended that the above-mentioned testimony was given before objection was entered. Defendant had previously objected to the giving of testimony on the part of Zahner regarding conversations he had with Mr. Esterly, although such objection was offered only after Zahner had related a conversation relative to the net income of the business. The objection was ruled adversely, whereupon defendant moved that said testimony be stricken. That motion was denied. The evidence regarding value of the equipment was given after the above took place. However, counsel for defendant, in her opening statement, gave the date of Mr. Esterly's death and stated that, because of his prior demise, any conversation occurring between him and plaintiff, or either of the third party defendants, "should be barred from testimony under the statute."
[19] Objection was made to the testimony of J. F. Johnson regarding conversations had with Mr. Esterly, on the grounds that Johnson was a party to the contract. In the course of Johnson's testimony was the first time that the matter came up in the trial. Such objection was overruled. The court and both parties were, at that time, fully cognizant of the grounds for the objection and it was timely made. Such objection was again made during the course of this witnesses' testimony. Objection was later made to similar testimony by W. H. Johnson regarding a conversation had with, and statements made by, Mr. Esterly. This objection was overruled. At that time, after the adverse ruling by the court, counsel for defendants said: "* * * and do I understand the court is letting the bars down on the matter of conversation between Mr. Esterly?" The court answered, "Yes." *Page 616 
Counsel then said: "We will try not to interrupt if that is the ruling of the court." The court said: "Proceed." The record demonstrates that defendant took all necessary steps to protect itself against the introduction of this incompetent testimony. Nothing more should be required. It was error to permit Zahner's testimony to be given as above stated.
[20] However, plaintiff says that the error, if any, was waived by defendant's lengthy cross-examination thereon. We do not so understand the law, as applied in this case.
[21] Plaintiff alleged, in his petition, that the reasonable value of the article sold was $3,500. He is judicially bound by that statement, so that he may not be heard to say that its value was less than $3,500. However, the allegation does not prove itself, and it, standing alone, constitutes no evidence whatever of value. The trial judge, apparently, rendered judgment on the theory that the property was of the value of $3,500 when the contract was made, although he found the value to be $2,500. Of course, if the value was $2,500, and there had been evidence to that effect, plaintiff, having paid $1,000 cash at the time the contract was made, would have actually owed but $1,500, not $2,000; and if credit be given plaintiff for $475 paid to See for supplies, which we think should not be done, then the amount to be paid by plaintiff, under the theory upon which the case was decided, should have been $1,025. But, be that as it may, there is no competent evidence of the value of the article sold.
[22] Defendant contends that there was no evidence tending to prove that plaintiff relied on the allegedly false statements as to the net income of the business because he personally investigated and saw and observed its operation. We think this was a question of fact for the court. The true facts as to net profits being earned by the business were within the peculiar knowledge of defendant, and not equally available to both parties, or readily ascertainable by plaintiff.
[23] It is also claimed that the evidence adduced by plaintiff failed to disprove the truth of the statements made by Esterly and claimed to have been relied on by plaintiff. The court found to the contrary and we think it was a question of fact, not of law, under the record.
[24] The judgment should be reversed and the cause remanded.
[25] BOUR, C., concurs.