**John PASLEY, Administrator of the Estate of Grace V. Davis, deceased, Late Guardian of Gerald H. Davis, Incompetent, Plaintiff-Appellant,**

v.

**J. Elmore MARSHALL, Guardian of the Person and Estate of Gerald H. Davis, Incompetent, Defendant-Respondent.**

No. 22538.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1957.

Arthur R. Kincaid and William B. Waters, Liberty, Lawson, Hale & Coleberd, Liberty, of counsel, for appellant.

William T. Thompson, Richmond, for respondent.

H. V. Higley, Administrator of Veterans Affairs, by V. E. Willis and J. E. Jirmars, Kansas City, for intervenor.

CAVE, Judge.

This is an appeal from a judgment of the Circuit Court of Ray County, denying a claim for a guardian's commission extending over a period of 28 years.

The facts and issues are not in controversy, and may be summarized as follows: On September 17, 1926, one Gerald H. Davis was declared to be a person of unsound mind by the Probate Court of Ray County, and on that date, his wife, Grace V. Davis, was appointed guardian of his person and estate; that she continued to act as such until her death, December 26, 1954; that John Pasley was appointed administrator of her estate; and that J. Elmore Marshall was appointed successor guardian of the person and estate of Gerald H. Davis, incompetent. It is further admitted that during her guardianship Mrs. Davis filed 28 annual settlements in the probate court, the last one being filed November 19, 1954; that said settlements show the aggregate amount of personal assets of $36,988.16 to have been received into the estate; and that all of said amount, except $1,054.64, was paid to her by the Veterans Administration as disability compensation of said incompetent.

It is also agreed that according to the 28 settlements, and the records of the probate court, Mrs. Davis did not receive any commissions; nor does it appear that she asked or requested or claimed any commissions during the guardianship; nor does it appear that she expressly waived in writing the payment of such commissions. However, it is admitted that during the guardianship there was paid to her, out of the estate, the sum of $18,500 for her support and maintenance.

After the death of Mrs. Davis, her administrator, John Pasley, filed a claim in the probate court against the successor guardian, seeking to recover $1,787.35 as commissions for Mrs. Davis during the entire time of her guardianship. The probate court denied the claim, and the cause was appealed to the circuit court. Judge William M. Kimberlin, sitting as special judge by order of the supreme court, heard the cause and denied the claim; and appeal was perfected to this court.

The sole question is whether, under the admitted facts, the administrator of Mrs. Davis may now recover her guardian's commissions for the 28 years she served as such.

Judge Kimberlin filed an exhaustive and well considered opinion which will be very helpful to this court. He held that, under the facts, she had *impliedly* waived her right to claim the statutory commissions.

At the time Mrs. Davis was appointed guardian in 1926, Sec. 432, R.S.1919, was in effect, and provided, "guardians and curators shall receive such compensation for their services *as the court shall decide to be just and reasonable * * *"*. (All italics are supplied.) In 1929, the legislature enacted a statute applicable to estates of incompetent persons who receive benefits from the Veterans Administration. This section (607, R.S.1929) provided, "The compensation allowed to guardians of such persons entitled to money benefits from the United States veterans' bureau shall not exceed five per cent of the income of a ward during any year". This section was amended in 1941 to provide that the compensation for such a guardian "shall not exceed five percent of the annual income from all sources, or one percent of the gross amount of the estate at the time of each annual settlement, whichever the guardian with the approval of the Probate Court shall elect in writing to take *at the time of each annual settlement*". In 1947, the legislature adopted the Uniform Veterans Guardianship Act, which provides, "Compensation payable to guardians shall be based upon services rendered and shall not exceed 5% of the amount of moneys received during the period covered by the account * * *". This is now Sec. 475.435, New Probate Code.

These sections contemplate that a guardian must take some affirmative action to claim commissions; and that the probate court has a discretion in making an allowance, as well as the amount thereof, not exceeding the statutory maximum. It is also apparent that one of the purposes of these sections is to preserve and protect the estate of the ward. We think a guardian of an incompetent is in a somewhat different position than competent adults relative to waiving a statutory right. The guardian holds a position of trust and must act under the orders and direction of the probate court. They are not at liberty to manage the ward's estate with the same freedom they might manage their own personal affairs.

It has been said that, "A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part". Schwab v. Brotherhood of American Yeoman, 305 Mo. 148, 155, 264 S.W. 690, 692.

In Swihart v. Missouri Farmers Mutual, etc., Ins. Co., 234 Mo.App. 998, 138 S.W. 2d 9, at page 17, the court quotes from many cases discussing the question of waiver, and concludes:

"A waiver occurs when—'one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward.' (Citing cases.)

"A consideration which is necessary to support a contract is unnecessary to support a waiver. A waiver may even take place in consequence of laches merely or in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and may be shown by conduct as well as by express words. (Citing cases.) Waiver is often closely related to estoppel, but evidence that fails to show estoppel may show waiver. (Citing cases.) Waiver is ordinarily a ques-

tion of fact, and depends largely upon the intention of the party. That intention, however, is not the secret intention of the party, but is the intention which is manifested by his conduct or his words in relation to the matter involved. (Citing cases.)"

In Dunn v. Pickard, Mo.App., 284 S.W.2d 6, 9, this court enumerates the essential elements of waiver as being: (1) the presence of an existing right, benefit or advantage; (2) knowledge of its existence; and (3) an intention on the part of the party to relinquish it; and that "One is not bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive, and the fact that he knows his rights, and intends to waive them must plainly appear, and the burden is on him who claims a waiver to prove it".

■ It is conceded that Mrs. Davis had an *existing right* to an annual commission; and that she is charged with *knowledge of its existence,* together with knowledge of the statutory proceedings necessary to make claim therefor. The question is, whether the admitted facts clearly support the finding that she *impliedly* waived her right to the commission. We believe they do, and that the probate court and the circuit court were correct in so finding.

She was the wife of the ward; she received, by order of the court, a monthly allowance from his estate for the entire period of the guardianship, totalling approximately $18,500; according to the probate court finding, she had, by order of the court, purchased a home from the assets of the estate, in which she and the ward lived; she made 28 annual settlements showing the status of the estate each year without making any claim for a commission; and her last settlement was made within about one month of the time of her death.

It is important, for many reasons, that the estate of an incompetent should be kept current, and correctly reported, from year to year in its assets, receipts and disbursements so that the probate court would know the true situation in making discretionary allowances. We do not mean to hold that a guardian must claim his commission each year or be forever barred. But certainly a claim that has been outstanding for 28 years would not reflect the true and accurate status of the estate.

■ As said in the Swihart case, supra, a waiver may take place "in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and may be shown by conduct as well as by express words". The admitted facts and Mrs. Davis' conduct are certainly inconsistent with the idea that she intended to claim commissions. This is particularly so when it is remembered that she at no time, during 28 years, personally claimed commissions, and that it was only after her death that a claim was made by her administrator.

■ It is true that "a mere forbearance for a reasonable time in the enforcement of an existing right is not in and of itself sufficient to constitute waiver"; Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920, 925; but in this case, we have much more than a *mere forbearance for a reasonable time.* In addition to the above mentioned facts which are indicative of her intent, there are twenty-eight consecutive times, when she should have spoken and advised the probate court of her desire to be allowed a commission, and did not do so. Certainly this can hardly be said to be a *reasonable time.*

We have examined the authorities cited by appellant and recognize that they announce correct general principles of law, but the facts make them inapplicable. For example, some of such authorities announce the rule that mere silence is no waiver unless there is an obligation to speak. We think a guardian owes it to the ward and to the probate court to speak, within a reasonable time, if he intends to claim a commission for his services.

It follows from what we have said that the judgment should be affirmed. It is so ordered.

All concur.

MAUGHMER, J., not participating.