**AUTO–OWNERS MUTUAL INSURANCE COMPANY, INC., Respondent,**

v.

**Bill NEWMAN, et ux., Appellants.**

**No. WD 46386.**

Missouri Court of Appeals, Western District.

March 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

---

Gene P. Graham, Jr., White, Allinder, Grate & Graham, Independence, for appellants.

R. Frederick Walters and T. John Wise, Walters Bender & Strohbehn, P.C., Kansas City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

SMART, Judge.

This case arises out of an insurance company's claim for a deficiency judgment against a mortgagor of real property after the assignment of a deed of trust to the insurance company by the mortgagee. Bill and Carol Newman ("the Newmans") appeal from the trial court's ruling sustaining Auto–Owners Mutual Insurance Co.'s ("Auto–Owners") motion for summary judgment and denying the Newmans' motion for summary judgment.

Judgment is affirmed.

On March 20, 1982, Bill and Carol Newman executed a promissory note to Robert Freddie Kincaid in the amount of $68,500.00, which was secured by a deed of trust on 160 acres and a dwelling house. Soon after the purchase, on April 2, 1982, the Newmans procured an insurance policy to cover the property for loss by fire with Auto–Owners. This policy named Kincaid, mortgagee, as a loss payee under a standard mortgage clause.

The dwelling house was destroyed by fire on September 9, 1982. The Newmans immediately made a claim under their policy. The insurance company denied the Newmans' claim. The Newmans then brought suit against Auto–Owners for the loss and Auto–Owners defended on the grounds of arson and misrepresentation as to the amount of loss. The jury hearing the claim returned a verdict for Auto–Owners.

The Newmans made payments to Kincaid from March 20, 1982 through February, 1986, reducing their principal balance to $55,551.05. The Newmans made no further payments after February. Kincaid foreclosed on the real property, purchasing it for $1,000.00 at the foreclosure sale. Kincaid successfully claimed against Auto–Owners for the fire loss to the property and was awarded $44,861.85 by a jury. Auto–Owners appealed the verdict. Kincaid and Auto–Owners reached an agreement whereby Kincaid agreed to assign the promissory note to Auto–Owners in return for payment of $42,430.93. At the time of the assignment, the note had an unpaid principal balance of $55,551.05 and accrued interest of $18,002.88. Auto–Owners subsequently instigated an action against the Newmans to enforce the promissory note as assignee. The trial court granted Auto–Owners' summary judgment motion and entered a deficiency judgment against the Newmans in the principal sum of $54,551.05 [1] plus interest in the amount of $18,002.88. The Newmans appeal from this judgment.

*Material Issue of Fact*

The Newmans first point on appeal is that the trial court erred in sustaining Auto–Owner's motion for summary judgment and in overruling The Newmans' summary judgment motion because material questions of fact existed concerning Mr. Kincaid's intention surrounding the disposition of the note. The trial court found that Kincaid intended to assign all of his right,

---

1. The $54,551.08 amount awarded to Auto–Owners represents the unpaid principal balance outstanding on the note equalling $55,551.08 less the $1,000.00 paid by Kincaid for the property at the foreclosure sale.

title and interest in the promissory note to Auto–Owners. The Newmans argue, however, that Kincaid's deposition testimony reveals that he intended to extinguish their obligation under the note.

■ In determining whether the trial court correctly granted a summary judgment motion, we review the entire record in the light most favorable to the party against whom the judgment was entered. *Irwin v. Wal–Mart Stores, Inc.,* 813 S.W.2d 99, 101 (Mo.App.1991). A trial court may enter summary judgment if no genuine issue of material fact exists and the law entitles the movant to a favorable judgment. *Id.* at 102. The opposing party must show the existence of a genuine issue of material fact. *Id.* at 101. A "material fact" is one having such probative value that it would control or determine the litigation. *Id.* at 102. Furthermore, in regard to summary judgment proceedings, Missouri law provides that a genuine issue of material fact is not created by mere doubt or speculation. The record must show "a factual question that would permit a reasonable jury to return a verdict for the non-moving party." *Id.* Missouri law presumes that the transfer of a promissory note to a stranger of the instrument is by purchase and not in satisfaction of the underlying obligation. *Heintz v. Woodson,* 714 S.W.2d 782, 784 (Mo.App.1986). Whether a note has been discharged upon transfer or assigned depends upon the intent of the parties.[2]

■ The Newmans argue that Kincaid's deposition testimony illustrated his intent to extinguish their obligation under the promissory note. However, the deposition testimony reveals simply that Kincaid did not understand the legal implications surrounding the assignment of the promissory note to Auto–Owners. Kincaid believed that his rights and obligations under the note had been terminated. Kincaid did not understand questions directed to whether he had intended to assign the note to Auto–Owners. Kincaid evidenced confusion

about the legal significance of the transfer, stating, "I thought it was all through, all paid off and was done with."

As a matter of law, Kincaid's understanding or lack of understanding of the legal effect of his actions in assigning the note is immaterial. The plain language of the agreement between the parties clearly sets forth the legal effect of the agreement and the intention of the parties. The agreement, entitled "Assignment of Note," which was signed by Kincaid, provided the following:

IN CONSIDERATION of full settlement by Robert Freddie Kincaid of the case captioned *Robert Freddie Kincaid v. Auto–Owners Mutual Insurance Company,* CV487–535CC ... the undersigned, Robert Freddie Kincaid, hereby assigns without recourse unto Auto–Owners Mutual Insurance Company all of its right, title and interest in and to a certain Promissory Note dated March 20, 1982, with the Promissory Note being in the principal amount of the original purchase price of $68,500.00 with the unpaid balance remaining on the Promissory Note of $55,551.05, principal and $18,002.88, accrued interest, made and executed on said date by William F. Newman, Jr. and Carol F. Newman, husband and wife.

Mr. Kincaid warrants and represents that the amounts listed above as unpaid are still due and owing under the terms of said Note. Mr. Kincaid further warrants and represents that he will cooperate with the holder of this Note by testimony in open court should it be necessary as to the unpaid principal balance and accrued interest.

■ The plain language of this agreement illustrates the parties' intention to assign the promissory note to Auto–Owners for the purpose of collection of the unpaid principal and interest. When the written instrument is clear and unambiguous, testimony will not be received to contradict the provisions of the instrument ab-

**2.** *See Heintz,* 714 S.W.2d at 784 (where the court held that the intent to purchase a promissory note was strongly evidenced where the assignor of a note wrote on its back "For Value Received I hereby assign this Promissory Note to ...").

sent fraud, common mistake, accident or erroneous omission. *Warrenton Campus Shopping Center v. Adolphus*, 787 S.W.2d 852, 855 (Mo.App.1990). The "parol evidence" rule is a rule of substantive law, not merely a rule of admissibility. *Harper v. Calvert*, 687 S.W.2d 227 (Mo.App.1984). Kincaid's statement as to what he understood is immaterial, even if received in evidence without objection. *Id.* at 230. Moreover, the Newmans' argument is inconsistent with facts they have been deemed to have admitted. Defendants failed to respond to Plaintiff's "First Request for Admissions" filed June 28, 1989. Thus, Defendants are deemed to have admitted the facts contained in the request, including a statement that the balance on the note was still due and owing. Reviewing the entire record in the light most favorable to the Newmans, we hold that the Newmans have failed to show the existence of a genuine issue of material fact. Thus, the trial court did not err in awarding Auto–Owners summary judgment and entering the deficiency judgment. Point I is denied.

### Equitable Entitlement to an Offset

The Newmans next contend that the trial court erred in finding that they were not equitably entitled to an offset for any monies paid by Auto–Owners to Kincaid. The Newmans argue that the trial court denied their request for an offset for the insurance proceeds because it found that the Newmans had been adjudicated arsonists. The Newmans claim on appeal that they were never adjudicated as arsonists. They argue that their unsuccessful suit against Auto–Owners does not legally preclude them from an equitable credit for any monies paid to Kincaid.

The fact that the trial court labeled the Newmans "arsonists" based on an inference drawn from the verdict denying their insurance claim is not determinative of the issue before us. The Newmans brought suit against Auto–Owners after they were denied insurance coverage for the fire damage. The insurance company defended its claim on the basis of arson and misrepresentation as to the amount of loss. The jury returned its verdict against the New-

mans. Necessarily, the jury found either that the Newmans were arsonists or that they were guilty of misrepresentations in connection with their claim. These were the only defenses submitted to the jury. Kincaid later brought suit against Auto–Owners for the fire loss. Kincaid's jury found for Kincaid based on the standard mortgage clause contained in the policy.

A "standard mortgage" or "union" clause in an insurance policy operates as an independent contract of insurance between the mortgagee of the property and the insurance company although the contract is not entirely disconnected from the mortgagor's policy. *Northwestern Nat'l Ins. Co. v. Mildenberger*, 359 S.W.2d 380, 384–85 (Mo.App.1962); *Swihart v. Missouri Farmers Mut. Tornado, Cyclone & Windstorm Ins. Co.*, 234 Mo.App. 998, 138 S.W.2d 9, 13 (1940). The mortgagee's insurance coverage under the clause cannot be defeated by any independent action or breach of the mortgagor. *Swihart*, 138 S.W.2d at 13. The independent nature of the contract is limited to the purpose of preventing any act of the mortgagor from defeating the mortgagee's rights under the policy. *Id.* Such a clause was used in the Newmans' insurance policy and it provided the following:

> Loss, if any, under this policy, shall be payable to the mortgagee named in the Declarations of this policy, as interests may appear, under all present or future mortgages upon the property described in this policy in which the mortgagee may have an interest....
>
> Whenever we pay the mortgagee any sum for loss under this policy, and claim that, as to the mortgagor or owner, no liability for payment existed, we shall, to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment was made under all securities held as collateral to the mortgage debt. Or at our option we may pay the mortgagee the whole principle due or to grow due on the mortgage, with interest accrued, and shall then receive a full assignment and transfer of the mortgage and of all collateral. Sub-

rogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

■ This standard provision provides the rights and liabilities of the parties to the insurance policy. Such clauses are valid and enforceable under Missouri law. *See, e.g., Mosby v. Aetna Ins. Co.,* 285 Mo. 242, 225 S.W. 715, 717 (1920); *Kilpatrick v. Hartford Fire Ins. Co.,* 701 S.W.2d 755, 757–58 (Mo.App.1985).

■ Generally, if the mortgagee recovers under the policy, the monies received by the mortgagee inure to the benefit of the mortgagor. However, if the mortgagor has been denied coverage under the policy, monies received by the mortgagee do not inure to the benefit of the mortgagor and thus, the mortgagor will not be entitled to an offset for monies paid to the mortgagee. The general rule has been stated as follows:

> [U]nder an insurance policy on mortgaged premises taken out for the benefit of both the mortgagor and mortgagee, the mortgagor is entitled to have payment of any loss credited to the satisfaction of the mortgage debt, yet if the policy has been forfeited as to the mortgagor by reason of the violation of some provision not affecting the mortgagee, the mortgagor is not entitled to the payment of the loss credited on the mortgage debt; rather, the insurer is entitled to be subrogated to all the rights of the mortgagee as against the mortgagor, as stipulated.

■ 16 Couch on Insurance 2d § 61:370, at 373 (Rev. ed. 1983) (footnote omitted). Missouri case law follows this general principle. *See Mosby,* 225 S.W. at 717; *Equitable Fire & Marine Ins. Co. v. Holland Banking Co.,* 214 Mo.App. 560, 262 S.W. 444 (1924); *Mississippi Lofts, Inc. v. Lexington Ins. Co.,* 653 F.Supp. 345, 347 (E.D.Mo.1986). Auto–Owners was adjudi-

cated not liable to the Newmans under the insurance policy. Since Auto–Owners was adjudicated not liable to the Newmans under the insurance policy, the amount paid by Auto–Owners to Kincaid does not inure to the benefit of the Newmans. In support of their argument, the Newmans cite *Swihart* and *Mildenberger* in support of the proposition that any payment made to Kincaid should inure to their benefit. These cases are distinguishable from the instant case because neither case involves a situation in which the mortgagor had breached a condition of coverage. We hold the trial court did not err in denying the Newmans' request for an offset. Point II is denied.

### Application of Article 9 of the UCC

■ Finally, the Newmans argue that the trial court erred in finding that §§ 400.9–102, 400.9–303 and 400.9–505, RSMo (1986) failed to operate to discharge their underlying obligation on the promissory note by virtue of Kincaid's acceptance of the collateral. The Newmans argue that Article 9 of the Uniform Commercial Code ("UCC") applied to this fact situation because Auto–Owners was in fact an assignee of a negotiable instrument and not a secured instrument. The Newmans suggest that Auto–Owners did not purchase a secured interest because the security for the promissory note was eliminated from the transaction upon completion of the foreclosure sale, rendering the promissory note nothing more than a negotiable instrument, subject to the provisions of the Uniform Commercial Code.

The Newmans argue that Article 9 applies to this case because the foreclosure sale disposed of the collateral securing the agreement, rendering the promissory note an unsecured negotiable instrument. However, they ignore the fact that Article 9 deals with transactions involving security interests in personal property. *See* §§ 400.9–102(1), (2) [3];

---

**3.** The first two subsections in § 400.9–102, entitled "Policy and scope of article," provide:

> (1) [T]his article applies so far as concerns any personal property and fixtures within the jurisdiction of this state....

> (2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment in-

400.9–104(j)[4]. They state that § 400.9–505, entitled "Compulsory disposition of collateral," applies to the present assignment of the promissory note, effectively extinguishing their liability under the promissory note. This argument is contradictory. Even if the Uniform Commercial Code were applicable to this transaction because the note is not secured by real estate, Article 9 would not be the applicable portion of the code. Thus, the trial court did not err in finding Article 9 inapplicable to this transaction. Point III is denied.

Judgment is affirmed.

All concur.

tended as security. This article does not apply to statutory liens except as provided in section 400.9–310.

4. Section 400.9–104(j), entitled "Transactions excluded from article," provides: "This article does not apply (j) ... to the creation or transfer of an interest in or lien on realestate."